THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ELEANOR PETERSON, Defendant-Appellant.

First District (5th Division)   No. 84—0305

Opinion filed May 27, 1988.—Rehearing denied July 8, 1988.

Michael Robert Kien, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry and Inge Fryklund, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PINCHAM delivered the opinion of the court:

Defendant, Eleanor Peterson, and codefendant, James Reginald Turner, were charged by indictment with the murder of defendant's husband, Roy Peterson. Following a jury trial, defendants were convicted as charged. Defendant Peterson was sentenced to 50 years and codefendant Turner[1] was sentenced to 40 years' imprisonment. In the instant appeal defendant contends that the medical evidence was insufficient to prove her guilt beyond a reasonable doubt, that the trial court erroneously excluded testimony regarding her state of mind, and that the trial court improperly failed to instruct the jury on the offense of manslaughter.

A summary of the evidence presented is as follows: in 1980, defendant, the mother of a 13-year-old boy and a nine-year-old girl, married the victim. Shortly thereafter the victim, who worked as a mail handler for the post office, purchased a condominium apartment in Dearborn Park in Chicago, and defendant, her daughter Torria, and the victim moved there. According to defendant, the victim began to display certain idiosyncrasies, such as failing to bathe, concealing food in his bedroom and crawling on the floor. At one o'clock in the morning on February 25, 1981, the victim refused to permit defendant and Torria to leave the apartment. After the victim and defendant shoved each other, defendant retrieved a pistol and shot at the floor, but struck the victim in his foot. Police officers transferred the victim to the hospital.

---

[1]This court affirmed the judgment against Turner in *People v. Turner* (1986), 143 Ill. App. 3d 417, 493 N.E.2d 38.

In the afternoon of August 10, 1982, Officer James Albrecht and James LaHocky went to the parties' apartment in response to a call regarding a "disturbance with a mental patient." The victim, who bore bruises on his face, stood in the hall outside the apartment door. Defendant refused to permit the victim into the apartment. When the police officers refused to remove the victim from the building, defendant warned, "If you don't take him out now, the next time you come back here, he'll be dead." That night the victim slept in a recreation room in the condominium building.

It was during the following 24 hours that the victim met his death at the condominium apartment. Barry Buford, a friend of defendant's, the victim, Torria, and codefendant were at the apartment. According to testimony of defendant and codefendant, in response to a telephone plea for assistance from defendant, Buford came to the apartment and beat the victim. Buford admitted his presence at the apartment but claimed that defendant had beaten up on the victim. After Buford left, defendant ordered the victim to bathe in a tub of hot water that defendant had prepared. According to the testimony, codefendant restrained the victim in the tub by tying and holding a towel around his neck. When the offenders observed the victim's eyes "roll back," they removed him from the tub and placed him on the bathroom floor. They then determined he was dead. Codefendant cleaned his fingerprints from the apartment and left the apartment with a bloodstained pillow defendant gave him to discard. Defendant then called the police. When they arrived they arrested defendant for murder.

Dr. Edmund Donoghue, a deputy medical examiner and forensic pathologist, who, on August 13, 1982, performed an autopsy on the victim, testified that the victim died as a result of having been beaten, scalded and strangled. Over 75% of the victim's body bore partial thickness burns, *i.e.*, burns of the epidermis; the left side of his buttocks had a stab wound; there were bruises and abrasions on his eyelids, forehead, nose, arms and chest, and he had suffered a subdural hematoma. Strangulation was indicated by a hemorrhage in a neck muscle. There was a hemorrhage in the victim's lower chest, tongue, head and above his right ear. The victim's sternum and hyoid bone had been fractured. The evidence further revealed that the victim's lungs were congested. There was also blood clotting, which indicated that the victim's death had occurred within 24 hours of the autopsy. The victim's burns resulted from exposure to heat, possibly water with a temperature in excess of 130 degrees Fahrenheit, and his abrasions, bruises and subdural hematoma were the result of blunt trauma.

Dr. Michael Kaufman, an anatomical pathologist and defense witness, testified that according to his analysis of the protocol, police and autopsy reports the victim died from subdural hematoma which could have resulted from blunt trauma occurring during kicking or beating. Dr. Kaufman suggested that his diagnosis was impaired by the lack of microscopic tissue sections.

We must now consider defendant's contention that the medical evidence was insufficient to support her guilt beyond a reasonable doubt because the medical examiner failed to prepare or examine microscopic tissue specimens of the partial thickness burns. In all situations in which experts are called to testify, their comparative credibility and the weight to be accorded to their testimony is a matter for the jury, as trier of fact, to determine. (*People v. Tackett* (1986), 150 Ill. App. 3d 406, 413, 501 N.E.2d 891.) A mere conflict in expert testimony does not create a reasonable doubt of defendant's guilt. (*People v. Hendricks* (1986), 145 Ill. App. 3d 71, 97, 495 N.E.2d 85.) A jury may consider the medical evidence in context and is not required to search out a cause of death compatible with innocence. (*People v. Fuller* (1986), 141 Ill. App. 3d 737, 748, 490 N.E.2d 977.) A jury's verdict will not be reversed unless the evidence is so unsatisfactory or improbable as to raise a reasonable doubt of the accused's guilt. *People v. Hendricks* (1986), 145 Ill. App. 3d 71, 97, 495 N.E.2d 85.

In the instant case, defendant claimed that the medical evidence was insufficient to prove her guilty beyond a reasonable doubt because the medical examiner did not remember whether he had prepared and examined microscopic tissue specimens in performing the autopsy on the victim. To support her contention, defendant relied upon testimony from her expert witness which indicated that he always prepared such specimens in conducting autopsies. We first note that a dispute between expert witnesses about the reliability of a method goes to the weight of the evidence and is a matter to be decided by the trier of fact. (*People v. Columbo* (1983), 118 Ill. App. 3d 882, 958-59, 455 N.E.2d 733.) According to Dr. Donoghue, the expert witness testifying for the State, the victim died as a result of having been beaten, strangled and scalded. While Dr. Kaufman, the defendant's expert witness, acknowledged that the victim had been strangled and scalded, he concluded that the death resulted from blunt trauma to the head causing a subdural hematoma. According to Dr. Kaufman, his ability to assess the impact of the scalding was limited because of the lack of microscopic tissue specimens. Nevertheless, it was undisputed that defendant was present in the apartment during

the course of the assault against the victim. Further, although contradicted by defendant, there was eyewitness testimony that defendant participated in the assault. By electing to testify, defendant became bound to provide a reasonable account of events or be judged by their improbabilities and inconsistencies. (*People v. Lester* (1986), 145 Ill. App. 3d 720, 738, 495 N.E.2d 1278.) Although expert testimony on the cause of death conflicted, the evidence was sufficient to sustain a finding that the victim died as a result of the assault he suffered in the apartment on August 11, 1982. Further, upon deliberating upon that evidence the jury concluded that it was sufficient to prove defendant's guilt beyond a reasonable doubt. We cannot conclude that the verdict was improper.

■ Defendant also argues that the trial court erroneously excluded testimony regarding her state of mind when she shot the victim in February 1981 and during the murder of the victim on August 12, 1982. By this argument defendant suggests that evidence regarding her state of mind was relevant to set forth a claim of self-defense. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. (*People v. Hunter* (1984), 124 Ill. App. 3d 516, 528, 464 N.E.2d 659.) It is fundamental that not all out-of-court statements are hearsay; only those offered to prove the truth of the matter asserted constituted inadmissible hearsay. (*People v. Ortiz* (1978), 65 Ill. App. 3d 525, 533, 382 N.E.2d 303.) If the out-of-court statements are offered to prove the resultant effect of those words on the listener's state of mind, then the speaking of the words is independently relevant regardless of the truth of their context and the statements are admissible as nonhearsay. *People v. Kline* (1980), 90 Ill. App. 3d 1008, 1012, 414 N.E.2d 141.

Defendant suggests that the trial court erroneously precluded her from presenting testimony regarding her state of mind in February 1981, when she shot the victim, and on August 11, 1982, when the victim was murdered. Regarding the events of February 1981, our review of the record established that defendant testified that the victim frightened her by shoving her and that Torria was behind her, screaming at the victim. While the victim refused to let them leave the apartment, defendant fired the weapon, shooting the victim in the foot. By her testimony of this incident defendant established her state of mind at the time of the shooting. The record does not reveal that defendant attempted to present testimony regarding her state of mind at the time of the murder. Further, there was no indication that the victim had threatened defendant and her daughter on August 11, 1982. The evidence established that the victim died as a result of

strangulation, scalding and a beating. There was no indication that defendant was in fear of her life from the victim. At no time during the trial proceedings did defendant raise the affirmative defense of self-defense. Had she presented this issue, evidence regarding her state of mind would have been relevant. Under the circumstances we believe that defendant's contention is without merit.

■ Next defendant asserts that the trial court improperly failed to instruct the jury on the offense of manslaughter. The trial judge is under no duty to give unrequested instructions, and a defendant's failure to request an instruction normally constitutes a waiver. (*People v. Gaines* (1981), 88 Ill. 2d 342, 366-67; *People v. Sanders* (1984), 127 Ill. App. 3d 471, 476, 469 N.E.2d 287.) Further, the general rule is that if there is evidence in the record which, if believed, would reduce the offense to manslaughter, then an instruction defining that crime should be given. However, if the evidence clearly demonstrates that the crime was murder and there is no evidence to support a conviction for manslaughter, an instruction on manslaughter should not be given; *People v. Wolski* (1980), 83 Ill. App. 3d 17, 26, 403 N.E.2d 528.

As we have previously indicated, defendant never raised the affirmative defense of self-defense. Further, the record is devoid of any evidence on such a claim. There was no indication that the victim had threatened or frightened defendant. We do not believe that there was any evidence to support defendant's claim that the trial court, *sua sponte*, was required to instruct the jury on the voluntary manslaughter.

■ Defendant also suggests that the trial court abused its discretion when it sentenced her to an extended term of 50 years' incarceration. The offense committed here was accompanied by exceptionally brutal and heinous behavior. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(b)(2).) We cannot conclude that the trial court abused its discretion in imposing the sentence. *People v. Perruquet* (1977), 68 Ill. 2d 149, 156.

■ ■ Finally, we note that over defendant's objections, the trial court admitted into evidence postmortem photographs of the victim which were viewed by the jury. Whether a photograph of a deceased person should be admitted is in the discretion of the trial court. (*People v. Bartall* (1983), 98 Ill. 2d 294, 318.) In reaching its decision, the trial court must determine whether the probative value outweighs the prejudicial effect of gruesome and inflammatory exhibits. (See *People v. Lefler* (1967), 38 Ill. 2d 216; *People v. Fierer* (1987), 151 Ill. App. 3d 649, 503 N.E.2d 594.) We believe that the admission of the photographs here was improper. They contributed nothing to the under-

standing of the cause of the victim's death and did not supplement the testimony. Notwithstanding, in the face of the overwhelming evidence against defendant, we cannot conclude that the admission of the photographs constituted reversible error.

For the reasons stated, the judgment of conviction is affirmed.

Affirmed.

LORENZ, P.J., and MURRAY, J., concur.