THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CARLOS RODRIGUEZ, Defendant-Appellant.
First District (3rd Division)   No. 1—91—1211

Opinion filed September 29, 1993.

Michael J. Pelletier and Elizabeth E. Clarke, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Lou Anne Corey, and Karen O'Malley, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

Following a jury trial, defendant Carlos Rodriguez was convicted of first degree murder under the theory of accountability for a drive-by shooting and sentenced to 25 years' imprisonment.

On appeal, defendant contests (1) the existence of probable cause to justify his arrest; (2) the sufficiency of the evidence as the basis of his conviction; (3) the exclusion of his co-offender's statement; and (4) the propriety of the 25-year sentence.

For the reasons which follow, we affirm the defendant's conviction and sentence.

This case arises from the drive-by shooting of Tommy Positano at Mitchell School shortly after midnight on August 3, 1988. Defendant was the driver of the car and his co-offender Miguel Vargas was the passenger in the car. Vargas did the actual shooting.

In a separate jury trial which occurred before defendant's trial, Vargas was convicted of second degree murder based on Vargas' unreasonable belief in the need for self-defense and sentenced to 15 years in prison.

Prior to trial, defendant sought to quash arrest and suppress certain evidence. At the hearing regarding this motion, two detectives testified, i.e., John Summerville and Ralph Vucko, who investigated the murder of Positano.

Detective Summerville testified that on August 4, 1988, he spoke with Carol Koniewicz, who witnessed the shooting. Ms. Koniewicz said that she was seated on her front porch when the shooting occurred and observed a black Trans Am car with a gold design similar to flames or thunder bolts on the driver's side of the car stop at the Mitchell school yard and several shots were fired from that car at the people standing in the school yard. After the shooting, the car sped away. She observed two male occupants in the car.

Detective Vucko testified that he was assigned to work on the Positano murder with Detective Summerville on August 6, 1988. The detectives interviewed Victor Penero at the police station. Penero told the police that two or three hours before the murder there had been a gang fight in the area of Maplewood and Chicago Avenues and that Danny Torres was involved in the fight and Torres sustained injuries in the fight.

The detectives then located Torres on the evening of August 6, 1988, and he agreed to come to the police station. Torres had an injury on his forehead but denied having been involved in a fight.

Torres said he had fallen down stairs at his sister's house and that he was with his mother the night of the murder.

The detectives left to verify Torres' story. Torres' mother said that Danny was not with her on the night in question. Moreover, Torres' sister said that Danny had arrived at her home in the early morning of August 3, related to her that he had been in a fight, and sought first aid. Torres' cousin, Jorge Colon, was also at the house and told the police that a man named Carlos had a black Trans Am with gold wheels, with flames or decals of flames on the side, and gold decals on the hood. Colon knew Carlos from the neighborhood baseball team and that Anthony Smith played on the same baseball team.

The detectives then interviewed Anthony Smith, who lived two or three doors away and agreed to accompany the detectives to the police station. Smith told the police he knew Carlos and where he lived.

The detectives then returned to confront Torres with the untruths and discrepancies in his statement. Torres then told the detectives that he was in a car that night with Carlos, had a gun, and was shooting out the window of Carlos' car. Torres described Carlos' car as a black Trans Am with gold wheels and decals on the side. The detectives then arrested Torres.

The detectives again talked to Victor Penero, who told the police that "Carlos" was Carlos Rodriguez.

After obtaining the address for Rodriguez, the police went to his apartment, knocked on the door, and identified themselves. Rodriguez admitted them to his apartment and acknowledged that he owned a black Pontiac Trans Am. The police then placed Rodriguez under arrest and later at the police station Rodriguez gave an inculpatory statement.

After Rodriguez was arrested and later that same evening and into the following morning, Torres told the police that the shooting in which he was involved occurred at Smith Park, not Mitchell School where Positano, the victim in the present case, was shot. Accordingly, the police then became aware that Torres, in his prior statement to the police, had been referring to an incident different than the murder they were then investigating.

The trial court denied defendant's motion to quash arrest and suppress evidence. Shortly thereafter, the trial court allowed the trials of defendant and Vargas to be severed at the request of defense counsel.

Prior to defendant's trial, the court granted the State's motion *in limine* to preclude defendant from introducing Vargas' statement taken by a court reporter on August 7, 1988, shortly after Vargas' ar-

rest. In his statement, Vargas admitted firing five shots at two men standing at Mitchell School after he saw them pointing something "chrome-like" at him. Vargas stated that he "didn't want to hurt anyone just scare them." One of Vargas' shots killed Positano.

Before defendant's trial, Vargas was tried and convicted of second degree murder. Vargas' attorney notified both the State and defendant's counsel that if Vargas were brought to defendant's trial, Vargas would exercise his fifth amendment right and not testify. In excluding Vargas' statement from defendant's trial, the trial court noted there is no inherent or independent reliability in Vargas' statement.

At trial, defendant did not testify; however, his statement was entered during the testimony of Assistant State's Attorney Maureen Ferrick, who questioned defendant after his arrest on August 7, 1988. In that statement, defendant said that about 9 p.m. on the night of the shooting he was at the corner of Chicago and Maplewood Avenues and a fight broke out and he left the scene when the police arrived. Later he returned to the same location and saw his friend Miguel Vargas about 11 or 11:30 p.m. Vargas entered defendant's car and "decided to see what the people who came to Chicago Avenue, the C Notes were doing." Defendant knew that Vargas was carrying a gun. Defendant and Vargas drove to Smith Park, saw some C Notes, and continued to drive through the neighborhood.

Defendant and Vargas then drove to Mitchell School, saw four or five people who appeared to be drinking beer and carried no weapons. They drove by these people slowly when Vargas fired about five shots and then sped away.

Two witnesses (George Miletic and Theresa Miletic, the wife of George) testified that they lived directly across the street from Mitchell School and heard the shots. They observed a black Trans Am drive by at a very high speed. When they first saw the car, its headlights were off; however, as the car passed their house, the lights were turned on.

Cynthia Miletic Randazzo, the daughter of George and Theresa Miletic, was staying at the Miletic's house the night of the shooting. While standing on the front porch of the house shortly after midnight, Cynthia saw a dark sports car drive with its headlights off around Mitchell School. The car drove behind the school gym out of her view and she heard five or six gunshots. Cynthia also saw a dark sports car speed past the house, its lights being turned on only as the car approached the street corner.

The defense called Ricardo Negron, who was a friend of defendant and his family, and Daniel Ramos, who had known defendant

about 15 years from the neighborhood. Both Negron and Ramos testified that defendant had a reputation as being a peaceful and law-abiding man. By stipulation, Marida Martinez stated that she was the supervising broker at the Century 21 real estate office where defendant worked as a licensed salesman and that defendant had a reputation of being a peaceful and law-abiding individual in that professional community.

The jury then found defendant guilty of first degree murder and the court imposed a 25-year prison sentence.

On appeal, defendant first asserts that the police lacked probable cause to support his warrantless arrest because the information regarding who was involved in the shooting was conflicting and so indefinite that it failed to even specify a location for the shooting. Defendant further asserts that his statement should have been suppressed as a result of his illegal arrest.

■■ The State contends that there was probable cause to arrest defendant based on the information obtained from witnesses to the shooting, the description of defendant's car, and the statements made by Danny Torres. We agree.

Absent clear error, the decision of a trial court on a motion to quash and suppress generally will not be disturbed by a reviewing court. (*People v. Foskey* (1990), 136 Ill. 2d 66, 76, 554 N.E.2d 192.) The totality of the circumstances determines whether probable cause to support a warrantless arrest exists. (*People v. Earnest* (1991), 224 Ill. App. 3d 90, 95, 586 N.E.2d 449, citing *Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317.) Our review of a warrantless arrest necessarily centers on the information available to the police before the arrest (*People v. Adams* (1989), 131 Ill. 2d 387, 398, 546 N.E.2d 561) and depends on whether the police acted reasonably under the circumstances (*People v. Halmon* (1992), 225 Ill. App. 3d 259, 276, 587 N.E.2d 1182).

The information known to the police prior to defendant's arrest was sufficient to establish probable cause since they had an occurrence witness (Carol Koniewicz) who identified defendant's car, a person (Colon) who identified defendant as the owner of the black Trans Am, and a person (Torres) who directly implicated defendant in a drive-by shooting, even though Torres' story was later determined to involve a different incident.

The issue is not whether the officers' belief was correct, but whether it was reasonable to hold such a belief. (*Adams*, 131 Ill. 2d at 398, 546 N.E.2d 561 ("[t]he question is, Would a reasonable person in that officer's position believe that a crime was being or had been com-

mitted?'').) Reliance on the Torres confession was reasonable even though later events showed that such reliance, although reasonable, was misplaced.

Since we find that the police had probable cause to execute the warrantless arrest of defendant, we also find no reason to suppress his subsequent statement.

■ Second, defendant asserts that the jury's finding of guilt by accountability of murder in the first degree was not supported by the evidence because he was merely driving his car when his passenger Vargas opened fire at Mitchell School and during the shooting he immediately accelerated his car to leave the scene as quickly as possible.

The State contends the evidence established that defendant knowingly and willingly participated in the shooting of the victim.

Where a criminal defendant challenges the sufficiency of evidence on appeal, the conviction will be overturned only if the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. (*People v. Schott* (1991), 145 Ill. 2d 188, 203, 582 N.E.2d 690.) The relevant inquiry on review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Schott*, 145 Ill. 2d at 203; *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.

The trier of fact evaluates the inferences to be drawn from the evidence, assesses the credibility of the witnesses, determines the weight to be given their testimony, and resolves any evidentiary conflicts. *People v. Young* (1989), 128 Ill. 2d 1, 48-49, 538 N.E.2d 461.

A defendant is accountable for the conduct of another if "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." Ill. Rev. Stat. 1987, ch. 38, par. 5—2(c); *People v. Reid* (1990), 136 Ill. 2d 27, 60, 554 N.E.2d 174.

Although mere presence at the crime scene does not render a person accountable for the crime (*People v. Johnson* (1991), 220 Ill. App. 3d 550, 554, 581 N.E.2d 118), the State is not required under the accountability theory to prove that the defendant actively participated in the overt acts which constituted the offense (*People v. Bell* (1991), 209 Ill. App. 3d 438, 445, 568 N.E.2d 238; *People v. Acklin* (1990), 208 Ill. App. 3d 616, 622-23, 567 N.E.2d 525).

A defendant may be deemed accountable for acts performed by another pursuant to a common plan or purpose. (*People v. Furby* (1990), 138 Ill. 2d 434, 456, 563 N.E.2d 421.) The trier of fact may

consider many factors in determining a defendant's legal accountability including proof that the defendant was present during the commission of a crime without opposing or disapproving it, that he maintained a close affiliation with his companions after the perpetration of the offense, and that he failed to report the crime. (*People v. Lovelady* (1991), 221 Ill. App. 3d 829, 840-41, 582 N.E.2d 1217.) Moreover, evidence of events surrounding and following the commission of the crime is competent to show participation in the crime itself for the purposes of accountability. *People v. Ruiz* (1982), 94 Ill. 2d 245, 257, 447 N.E.2d 148; *People v. Coleman* (1991), 223 Ill. App. 3d 975, 992, 586 N.E.2d 270.

In the present case, defendant admitted in his statement that he had been in the area of a gang fight on the day of the murder, that he knew Vargas had a gun when they were driving around, and they cruised the streets looking for members of a gang called the C Notes. The trial witnesses testified that when defendant approached the Mitchell School before the shooting, the defendant drove slowly and had turned off the car's headlights. After the shooting, defendant quickly fled the scene and made no attempt to report the shooting to the police.

Defendant maintains that the evidence is susceptible to at least two different interpretations. According to defendant, the car could have slowed down, its headlights off, to allow Vargas to aim. Instead, the car might have slowed down, its headlights turned off, merely to enable defendant and Vargas to observe the individuals in the park. Defendant's argument that there are two possible interpretations to be gleaned from the trial testimony does not persuade us to reverse his conviction since it is the function of the trier of fact to resolve such conflicts in the evidence and draw reasonable inferences. (*Lovelady*, 221 Ill. App. 3d at 841.) The jury clearly rejected defendant's position that he acted innocently and the determination of any inconsistencies or discrepancies is the province of the trier of fact, not a reviewing court.

From our review of the record, we cannot say that the evidence is so improbable or unsatisfactory so as to create a reasonable doubt of defendant's guilt.

■ Defendant next contends that the trial court erred in granting the State's pretrial motion to preclude defendant from introducing the statement of his co-offender Vargas taken by a court reporter several days after the incident.

The State asserts that Vargas' statement was properly excluded because it was inadmissible hearsay and did not satisfy the indicia of trustworthiness to be admissible as an exception to the hearsay rule.

An extrajudicial statement by a declarant not under oath that he, and not the defendant on trial, committed the crime is generally inadmissible hearsay even if the statement is against the declarant's penal interest. (*People v. Bowel* (1986), 111 Ill. 2d 58, 66.) Where there are sufficient indicia of trustworthiness of such an extrajudicial statement, however, the declaration may be admitted as a statement-against-penal-interest exception to the hearsay rule. *Bowel*, 111 Ill. 2d at 66, citing *Chambers v. Mississippi* (1973), 410 U.S. 284, 302, 35 L. Ed. 2d 297, 313, 93 S. Ct. 1038, 1049.

In *Chambers*, the United States Supreme Court found the following four factors to be sufficient indicia of trustworthiness so as to allow the extrajudicial declaration admissible: (1) the statement was made spontaneously to a close acquaintance shortly after the crime occurred; (2) the statement was corroborated by other evidence; (3) the statement was self-incriminating and against the declarant's interest; and (4) there was adequate opportunity for cross-examination of the declarant. (*Chambers*, 410 U.S. at 300-01, 35 L. Ed. 2d at 311-12, 93 S. Ct. at 1048-49.) The four factors enumerated in *Chambers* must be regarded simply as indicia of trustworthiness and not as specific requirements of admissibility. (*Bowel*, 111 Ill. 2d at 67.) The inquiry in considering the admissibility of such a hearsay statement "is whether the declaration was made under circumstances that provide 'considerable assurance' of its reliability by objective indicia of trustworthiness." *Bowel*, 111 Ill. 2d at 67, quoting *Chambers*, 410 U.S. at 300-01, 35 L. Ed. 2d at 311-12, 93 S. Ct. at 1048-49.

A trial court's ruling on the admission of such evidence will not be reversed absent a clear showing of abuse of its discretion. *Bowel*, 111 Ill. 2d at 68.

The factors listed in *Chambers* are still considered as indicia of trustworthiness to either support or refute the admission or preclusion of an extrajudicial statement against penal interest. First, Vargas' statement was not made spontaneously to a close acquaintance shortly after the crime occurred. Rather, Vargas made the statement at issue to the police after his arrest five days after the shooting. See *People v. Robinson* (1992), 233 Ill. App. 3d 278, 283-84, 598 N.E.2d 1348.

Second, no adequate opportunity existed for the cross-examination of Vargas since Vargas would have invoked his fifth amendment rights if he called to testify at defendant's trial. *People v. Nally* (1991), 216

Ill. App. 3d 742, 770, 575 N.E.2d 1341; *People v. Carter* (1988), 174 Ill. App. 3d 369, 374, 528 N.E.2d 349.

We might take a different view of the matter if the excluded statement exonerated defendant. However, in the present case, Vargas' statement does not exonerate but rather incriminates defendant for the exact offense of which he was convicted, *i.e.*, first degree murder by accountability. The jury heard and, by its verdict, accepted defendant's statement declaring that he was the driver of the car and his passenger fired the fatal shots. The fact that a codefendant actually fired the fatal shot does not lessen a defendant's culpability when it is based on the theory of accountability. *People v. Bell* (1981), 96 Ill. App. 3d 857, 867, 421 N.E.2d 1351.

In *Bell* the defendant Bell and one of his co-offenders, Hampton, were tried separately for the death of the victim who had been severely beaten although the immediate cause of the victim's death was a bullet wound. In an extrajudicial statement, Hampton admitted shooting the victim. At Bell's trial, the court excluded Hampton's confession and the appellate court affirmed, finding that Hampton's statement was inadmissible hearsay and failed the *Chambers* reliability test. The court further found that even if "Hampton's confession should have been admitted in evidence, Bell's murder conviction would not be reversed because that conviction is not based on the theory that Bell himself fired the fatal shot, but on the theory of accountability." *Bell*, 96 Ill. App. 3d at 867.

Under the circumstances of this case, we find that the trial court did not abuse its discretion in excluding Vargas' statement because it did not carry the necessary indicia of trustworthiness and, in any event, did not absolve defendant of guilt.

■ Lastly, defendant contests his 25-year sentence for first degree murder as (1) an abuse of discretion since he had no prior criminal history, was employed as a real estate agent at the time of the incident, and had a peaceful reputation within the community; and (2) impermissibly disparate with the 15-year sentence imposed on his co-offender Vargas for second degree murder.

The State initially asserts that defendant waived these issues by failing to object at the sentencing hearing and alternatively maintains that the 25-year sentence for first degree murder is not improper.

The record reveals that defendant did not raise these issues either at his sentencing hearing or in a subsequent motion to the trial court. Accordingly, the sentencing issues now raised by defendant have been waived. *People v. Hartzol* (1991), 222 Ill. App. 3d 631, 646, 584 N.E.2d 291; *People v. Williams* (1989), 180 Ill. App. 3d 294, 305, 535

N.E.2d 993; *People v. Clark* (1987), 160 Ill. App. 3d 877, 890, 513 N.E.2d 937.

Even assuming that defendant has not waived the sentencing issues, a reviewing court will not disturb a sentence which falls within the statutory limits unless it is manifestly disproportionate to the nature of the offense. *People v. Costello* (1992), 224 Ill. App. 3d 500, 510, 586 N.E.2d 742.

The offense of first degree murder carries a sentence of not less than 20 years and not more than 60 years. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)(1)(a).) Thus defendant received a sentence 5 years more than the minimum and 35 years less than the maximum.

Defendant places great reliance on the fact the he had no prior criminal record. However, a defendant's status as a first-time offender is merely another mitigating factor which is to be considered by the trial court with all the other mitigating and aggravating factors. (*Costello*, 224 Ill. App. 3d at 510.) "A defendant's lack of a prior record is not necessarily the most persuasive consideration at sentencing, and the seriousness of the crime has been called the most important factor to be considered in imposing the sentence." *Costello*, 224 Ill. App. 3d at 510.

Defendant also argues that the sentencing court chose to ignore the evidence in mitigation. However, the record belies this argument because- the trial judge expressly acknowledged that "the record shows that this is an unusual piece of behavior by Rodriguez. Somewhat of an aberration, given his no arrest background." Moreover, even if the trial court does not expressly state its consideration of all mitigating factors, such consideration is presumed where, as here, the mitigating factors were argued before the court. *People v. Watkins* (1990), 206 Ill. App. 3d 228, 246, 563 N.E.2d 806.

This court recognizes the anomaly created by the differing sentences meted out to defendant, the driver, and Vargas, the actual shooter. How can it be that the person who held the gun, took aim, fired five times, and killed his prey receives a lesser sentence than the person who drove the car and merely doused the lights and hit the accelerator?

An arbitrary and unreasonable disparity between the sentences of codefendants who are similarly situated is impermissible. (*People v. Godinez* (1982), 91 Ill. 2d 47, 55, 434 N.E.2d 1121.) However, defendant and Vargas are not similarly situated since they were convicted of different offenses. (*People v. Foster* (1990), 199 Ill. App. 3d 372, 393, 556 N.E.2d 1289; *People v. Conaway* (1981), 101 Ill. App. 3d 202, 204, 427 N.E.2d 1302.) The sentencing requirements for the offenses also

differ substantially. First degree murder requires a sentence between 20 to 60 years. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)(1)(a).) Second degree murder, however, is a Class 1 felony (Ill. Rev. Stat. 1991, ch. 38, par. 9—2(d)), which requires a sentence between 4 to 15 years (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)(4)). Regardless of the accountability of the defendant or other persons, a sentencing court must follow the dictates established in the sentencing statute for the offense of which the defendant was convicted. See *People v. Edwards* (1982), 105 Ill. App. 3d 822, 828, 434 N.E.2d 1179.

Moreover, Vargas received the maximum sentence allowed for second degree murder while defendant received nearly the minimum sentence allowed for first degree murder.

Furthermore, the conviction of a person under the accountability theory is not contingent on the disposition of the principal. "Section 5—3 of the Criminal Code provides that a person who is legally accountable for the conduct of another may be convicted upon proof that the offense was committed and that he was accountable, without regard to the disposition of charges against the principal or the failure to charge." *People v. Schmitt* (1989), 131 Ill. 2d 128, 139, 545 N.E.2d 665.

Section 5—3 specifically provides as follows:

"5—3. Separate Conviction of Person Accountable. A person who is legally accountable for the conduct of another which is an element of an offense may be convicted upon proof that the offense was committed and that he was so accountable, *although the other person* claimed to have committed the offense has not been prosecuted or convicted, or *has been convicted of a different offense or degree of offense,* or is not amenable to justice, or has been acquitted." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 38, par. 5—3.

The language in this statute clearly recognizes the anomaly presented in the case at bar. Unequal disposition of the charge unavoidably validates unequal punishment of the offenders.

For all the foregoing reasons, we affirm defendant's conviction and sentence.

Affirmed.

RIZZI and CERDA, JJ., concur.