THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GERALD WILLIAMS, Defendant-Appellant.

First District (1st Division)   No. 1—91—3184

Opinion filed July 18, 1994.

Michael J. Pelletier and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Lou Anne Corey, and Lisa Travis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

Defendant Gerald Williams was charged with the first-degree murder of his wife, Alice Williams. Following a bench trial, defendant was convicted of second-degree murder and sentenced to 10 years' imprisonment. Defendant appeals his conviction and sentence. We affirm.

The State's first witness was Alice Kyle, decedent's and defendant's daughter. Kyle stated that decedent had been suffering from multiple sclerosis, which had confined her to a wheelchair and had rendered her unable to feed herself. On December 23, 1989, Kyle, her husband and two children went to her parents' home to a Christmas party organized by defendant in order that decedent could see people for the holiday. Kyle described decedent's spirits as good "in light of her condition" and defendant as being quieter than usual.

Kyle further testified that she had never seen defendant being physically abusive to decedent but had witnessed him verbally abuse her. However, despite Kyle's suggestion that defendant place decedent in a full-time care facility, he insisted upon caring for her in their home. On cross-examination, Kyle opined that defendant was suffering from "battle fatigue."

After Kyle's testimony, the State entered the transcript of defendant's call to 911 on December 24, 1989, at approximately 6 p.m. During the call, defendant reported "I just shot my wife at 5440 South Nordica. Send me some help, please. *** Ya, I am a retired police officer myself and she is nothing but trouble and she is sick and everything else."

The State's next witness was Officer Womack, who responded to the police radio dispatch concerning the above 911 call. She arrived at defendant's home and entered the house. She saw decedent in the wheelchair and a gun in a holster on a chair to her left. Womack testified that she went into the rear bedroom, found defendant talking on the telephone, asked him to hang up and, after he had done so, asked him what had transpired. Prior to the question and defendant's answer, Womack did not give him the *Miranda* warnings. At this point in Womack's testimony, defense counsel objected to questions concerning the statements defendant made in response to the initial inquiry. The circuit court overruled the objection, stating that at the time of Womack's initial inquiry into what had happened, defendant was not in a "custodial situation."

After the above ruling, Womack testified that defendant stated that he was decedent's husband, that she had been suffering a debilitating disease for the past 10 years and that he had shot her because she was having spasms and screaming in pain for most of the day. Defendant additionally commented that he had told his wife that he would "end her suffering" and thereafter shot her.

The parties then stipulated that if Dr. Robert Stein were called to testify, he would state that the cause of decedent's death was a gunshot wound to the head. The State rested its case in chief. Defendant then moved for a directed verdict, which the circuit court denied. He also renewed his objection to the portion of Womack's testimony regarding his statements prior to being "Mirandized." The circuit court reiterated its previous reasoning and overruled the objection.

Defendant's first witness was Detective Thomas Ptak, who was assigned to decedent's shooting death. He spoke with defendant on December 24, 1989, at about 7:15 p.m. after reading him the *Miranda* warnings. When questioned by Ptak, defendant denied ever characterizing the shooting as a "mercy killing," and stated "I love my wife. I have taken care of her since my retirement by bathing her, feeding her, and totally taking care of her for the last five, six years." During trial, Ptak summarized defendant's conversation with him as follows:

> "He stated that he was in another room in the house and his wife was in the kitchen area. She began screaming for help. He went to her aid. He kept asking her, what can I do for you? What do

you want? She kept screaming. Her screams turned to shrieks and continued. As he asked to help her, she kept screaming louder. He next remembers putting his gun, his service revolver in his holster.

Q. Did he ever indicate to you that he remembered going to get his gun or doing an act of shooting the gun?

A. No. I asked him specifically where the gun was kept. He said behind the headboard, which probably would have been 25 feet away from the shooting. He said, I don't remember getting the gun, and later he told me, I don't even remember which hand the gun was in when it went off."

The next witness for the defense was Ernest Brueckman, who has known defendant since 1956, when the two began working as partners on the Chicago police department. Brueckman testified that he and his wife had socialized with defendant and decedent over the years. Brueckman described defendant's relationship with decedent as very good and close.

Dr. Sarah Minden, a psychiatrist who has done research on the psychological aspects of people suffering from multiple sclerosis and their families, testified that when she met defendant, he cried, stated that he missed his wife and commented that he did not understand how the shooting could have happened. Minden testified that defendant had told her that he had adored decedent, put her on a pedestal and that she was like "pictures of Jesus with a halo around her."

After a continuation of the trial, during which Dr. Werner Tuteur's deposition was taken, the trial resumed and the deposition was admitted into evidence. In his deposition, Tuteur testified that he had conducted a mental status examination of defendant on February 27, 1990. Tuteur's opinion was that at the time defendant shot his wife, he was unable to appreciate the criminality of his conduct and could not conform his conduct to the law because he was suffering from a mental disease. Tuteur believes that at the time of the shooting, defendant was unable to form criminal intent. In his opinion, defendant suffered from atypical psychosis and was so disoriented that he "lost contact with reality and all judgment." On cross-examination, Tuteur admitted that it would have been "of interest" to talk to friends or relatives of defendant in forming his opinion, but he failed to do so. After the admission of Tuteur's testimony, defendant rested.

In rebuttal, the State called Dr. Robert Reifman, director of the psychiatric institute of the circuit court of Cook County. Reifman testified that he had met with defendant and determined that he and decedent had been under a great deal of stress when he shot her. Reifman opined that defendant had no mental disease at the time of

the shooting, could appreciate the criminality of his act and could conform his conduct to the requirements of the law. Reifman concluded that defendant did not meet the legal standards for insanity at the time he shot decedent.

After closing arguments, the circuit court found that the State had proven defendant guilty of first-degree murder beyond a reasonable doubt. Then, the circuit court considered defendant's insanity defense. The court acknowledged that defendant had suffered from anxiety and depression, but found that it did not amount to "a mental disease or a mental defect which would make him not criminally responsible for his conduct." The circuit court explained that it found Reifman's testimony "to be more realistic and more logical in its scope, and again, for those reasons, [it does] not believe the defense has met its burden by a preponderance of the evidence as to the issue of sanity." Ultimately, the circuit court found defendant guilty of second-degree murder because there was "a sudden and intense passion, *** he was acting on years and years of living a difficult situation" and that "[t]here was a stimulus provided for the provocation."

On September 17, 1991, after a hearing, the circuit court denied defendant's motion for a new trial. Thereafter, the sentencing hearing was held. In aggravation, the State argued that the goal of sentencing in this case should be to deter others from committing similar crimes, especially since the case at bar had received such wide media coverage. It further argued in aggravation that decedent was over 60 years old and was wheelchair-bound.

Defendant called Brueckman as a witness in mitigation. He testified that defendant was a good man and would never commit another crime. Brueckman recounted an instance where defendant saved his life when he was attacked by a man with a butcher's knife and an instance where defendant rescued children and adults from a burning building. A second witness, Richard Bedran, a police officer with whom defendant had worked, testified that in 1983 defendant immediately entered a tavern after hearing gunfire rather than wait for a backup. Defendant was shot, but managed to down the individual who had shot someone prior to defendant's entry. Defendant also admitted evidence in mitigation that since the shooting, he had experienced a heart attack and had a pace maker implanted, and therefore might die in prison if sentenced to serve there.

Before handing down the sentence, the circuit court responded to defense counsel's argument that defendant might die while in prison, stating:

"[Defendant] may end up dying himself in the Department of

Corrections. I don't know, [defense counsel], as you stated that may very well be true. But at his age and with his background, he may very well die in the general population too. He may very well live in both places, but I cannot consider the fact that he might die there as a reason for not imposing a sentence to put him there."

The circuit court further commented that it felt that the sentence imposed must be a serious one in order to "deter others from committing acts such as [defendant] did." Defendant was sentenced to 10 years' imprisonment. Lastly, the circuit court stated that "for the purposes of sentencing the two counts will merge."

●1 Defendant's first argument on appeal is that he was denied his fifth amendment right when the circuit court allowed Womack's testimony of her initial questioning of defendant at the scene of the crime. Although defendant made a contemporaneous trial objection and renewed it at the close of Womack's testimony, he failed to include this issue in his written post-trial motion. It is well settled in Illinois that in order to preserve an issue for review, a defendant must make both a contemporaneous trial motion and include the issue in a written post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) The plain error exception to the above waiver rule applies only if "the evidence is closely balanced or the error is of such magnitude that the commission thereof denies the accused a fair and impartial trial or sentencing hearing." *People v. Young* (1989), 128 Ill. 2d 1, 47, 538 N.E.2d 461.

The evidence in this case is not closely balanced. Even if Womack's testimony regarding defendant's admissions at the scene of the crime is disregarded, there was overwhelming evidence that defendant knowingly shot his wife, appreciated the criminality of his act and could have conformed his actions to the requirements of the law. The 911 call immediately following the shooting was admitted into evidence and indicated that defendant was not insane. Additionally, there was competent expert testimony which indicated that defendant was sane at the time of the commission of the crime. Accordingly, we find that defendant waived this issue for review and that it does not fall within the parameters of the plain error doctrine because the evidence is not closely balanced.

Defendant's second argument is that the circuit court erred in finding him guilty of second-degree murder because he proved by a preponderance of the evidence that he was insane at the time of the shooting. We disagree.

The Criminal Code of 1961 defines the affirmative defense of insanity as:

"A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." (Ill. Rev. Stat. 1991, ch. 38, par. 6—2(a) (now 720 ILCS 5/6—2(a) (West 1992)).)

In Illinois, all persons are presumed sane. A defendant wishing to assert the affirmative defense of insanity bears the burden of proving it by a preponderance of the evidence. (*People v. Williams* (1990), 201 Ill. App. 3d 207, 558 N.E.2d 1258; Ill. Rev. Stat. 1991, ch. 38, par. 6—2(e) (now 720 ILCS 5/6—2(a) (West 1992)).) A reviewing court will not disturb a circuit court's finding on an insanity defense unless the finding was against the manifest weight of the evidence. *People v. Beehn* (1990), 205 Ill. App. 3d 533, 563 N.E.2d 1207.

●2 In the case at bar, there was substantial evidence of defendant's sanity at the time he committed the murder. Although there was conflicting expert psychiatric testimony, the circuit court found Reifman's analysis of defendant's mental health at the time of the commission of the crime to be more credible. The circuit court is free to accept the testimony of one expert over another. The experts' comparative credibilities and the weight to be given their testimonies are matters for the trier of fact to determine. *People v. Peterson* (1988), 171 Ill. App. 3d 730, 525 N.E.2d 946.

In addition to Reifman's testimony, which effectively rebutted defendant's experts' testimonies, the admission of the transcript of the taped 911 call immediately after defendant shot decedent indicated that he was fully aware of the act which he had just committed. A revealing portion of the transcript reads, "I just shot my wife at 5440 South Nordica. Send me some help, please. *** Ya, I am a retired police officer myself and she is nothing but trouble and she is sick and everything else." Then, when Officer Womack arrived at the scene, he explained that he had shot his wife, that she had been sick for many years and that she had been having spasms and screaming most of the day. Defendant told Womack that he had promised decedent that he would "end her suffering" and then proceeded to shoot her.

After reviewing the record, we have determined that the circuit court's finding that defendant failed to meet his burden of proving insanity by a preponderance of the evidence was not against the manifest weight of the evidence. Thus, we uphold defendant's second-degree murder conviction.

Next, defendant argues that the imposition of the sentence of 10 years' imprisonment was excessive when the mitigating and

aggravating factors are weighed properly. The State initially argues that defendant has waived this issue by failing to object at the sentencing hearing and to file a post-sentencing motion for reconsideration. However, the supreme court has held that such an objection and motion are not necessary to preserve the issue for review. *People v. Lewis* (1994), 158 Ill. 2d 386, 389.

We find that the circuit court was within its discretion in imposing defendant's 10-year sentence. The sentence handed down by a circuit court is given great deference and weight when reviewed by appellate courts. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344.) Absent an abuse by the circuit court, the sentence may not be altered on review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) There is a rebuttable presumption that the sentence imposed was proper. This is only overcome by an affirmative showing that the sentence imposed varies greatly from the purpose and spirit of the law or is manifestly violative of constitutional guidelines. (*People v. Jenkins* (1984), 128 Ill. App. 3d 853, 471 N.E.2d 647.) A reviewing court may not substitute its judgment for that of the circuit court merely because it would have balanced the appropriate factors differently had the task of sentencing been charged to it. *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.

●3 Defendant was convicted of second-degree murder, a Class 1 felony. (Ill. Rev. Stat. 1991, ch. 38, par. 9—2(d) (now 720 ILCS 5/9—2(d) (West 1992)).) For second-degree murder, the appropriate sentence is "not less than 4 years and not more than 15 years." (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)(4) (now 730 ILCS 5/5—8—1(a) (West 1992)).) Defendant's sentence is within the statutory guidelines.

Defendant additionally contends that the circuit court failed to take into account his background and age. After a review of the record, we disagree. In fact, the circuit court explicitly stated that it recognized certain factors in mitigation. The circuit court stated:

> "I did find that the defendant is criminally responsible for his actions ***. I take forth the factors in mitigation that have been put forth here. It is clear that defendant has no history of prior delinquency, and perhaps he—there is no indication that he would commit another crime, especially a crime such as this. And I take into consideration his past as a Chicago Police Officer, the commendations and mentions that he has ... received. I believe it is proper in sentencing a person to take into account his past accomplishments and his past acts of good, and I am doing that here. There is sympathy involved here. I have to set that aside and impose a sentence I feel is appropriate here."

Defendant also argues that the circuit court failed to take into account his poor health. The record does not indicate that the circuit court expressly refused to consider defendant's health. The circuit court stated in regards to defendant's health:

"[H]e may end up dying himself in the Department of Corrections. I don't know ... But at his age and with his background he may very well live in both places, but I cannot consider the fact that he may die there as a reason for not imposing sentence to put him there."

Our interpretation of the above is that the circuit court was merely pointing out that it could not impose a sentence based solely on the fact that defendant had experienced a heart attack, was 69 years old and might conceivably die in 10 years.

Defendant also argues the circuit court improperly considered deterrence as an aggravating factor. There are, however, several cases in which a reviewing court has found that despite a conviction of second-degree murder, deterrence can properly be considered as a factor in aggravation. (See *People v. Hall* (1987), 159 Ill. App. 3d 1021, 513 N.E.2d 429; *People v. Black* (1992), 223 Ill. App. 3d 630, 585 N.E.2d 1228.) We, therefore, hold that the circuit court was within its discretion in considering deterrence as a factor in handing down defendant's sentence.

After reviewing the sentencing portion of the record, we find no abuse of discretion on the part of the circuit court. Accordingly, we affirm defendant's sentence.

•4 Finally, all parties agree that defendant is accountable for only one conviction of second-degree murder. According to *People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1, the proper procedure in a case where multiple judgments have been entered on a single act is to vacate those judgments which are superfluous. Accordingly, we remand this cause with instructions that the circuit court correct the mittimus to reflect only a conviction of second-degree murder and vacate the other convictions.

For the foregoing reasons, the conviction and sentence of the circuit court of Cook County are affirmed, but this cause is remanded with instructions to correct the mittimus to reflect only one conviction for second-degree murder.

Conviction and sentence affirmed; cause remanded with instructions to correct the mittimus.

CAMPBELL, P.J., and MANNING, J., concur.