THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JUAN YBARRA, Defendant-Appellant.

First District (4th Division)   No. 1—93—2631

Opinion filed June 1, 1995.

CAHILL, J., dissenting.

Rita A. Fry, Public Defender, of Chicago (Andrea Monsees, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Sang Won Shim, and A. Samuel Black, Assistant State's Attorneys, of counsel), for the People.

JUSTICE THEIS delivered the opinion of the court:

Following a bench trial, the defendant, Juan Ybarra, was convicted of burglary (Ill. Rev. Stat. 1991, ch. 38, par. 19—1) and sentenced as a Class X offender to a term of 15 years' imprisonment. The defendant appeals this decision, raising two issues for our consideration: (1) whether he was proved guilty beyond a reasonable doubt and (2) whether he was properly sentenced. We affirm.

Chicago police officer Cruz Reyes testified that he was with his partner at about 12:30 a.m. on September 1, 1992, when they heard a loud alarm begin sounding from a block away. When they rounded the corner, Reyes observed the defendant "pulling back the boarded up bottom portion of the door" to a laundromat. Once the defendant pulled back a portion of the door, he crawled inside the laundromat.

Reyes stood at the front door to the laundromat, announced his office and ordered the defendant outside. Reyes testified that the defendant came out. The laundromat consisted of coin-operated machines and was closed. Upon searching the defendant, the police found no money or burglary tools on him.

The parties stipulated that if the owner of the building, Ahmed Awad, were called to testify, he would say that he did not give the defendant permission to be in that location and in that business at that time.

The defendant then testified that at about 10:30 p.m. on the night in question, he left his house and went to the liquor store two blocks away where he bought some beer. During the next two hours the defendant stood outside the liquor store and drank 40 ounces of beer and two bottles of wine. The defendant then went to the alley behind the liquor store and relieved himself. The defendant returned to the liquor store and purchased another bottle of wine. The defendant began walking toward his house but again stopped at the alley to relieve himself. The defendant then started drinking the wine as he walked.

The defendant testified that at about 12:30 a.m. on the night in question he "crawled inside the laundromat" through a partially boarded-up front door. At that time, the defendant heard the police tell him to come out so he complied. The defendant explained that he had entered the laundromat to use the washroom. He stated that he did not stop in the alley nearby because he "couldn't hold it any longer." The defendant denied using any tools, screwdriver or pliers to enter the store, and he denied intending to take anything from inside.

On cross-examination, he admitted the laundromat was closed and there were no other people inside. He also explained that his house was about one block from the laundromat and the nearest alley was about one-half block away directly behind the laundromat.

In rebuttal, the State introduced into evidence the defendant's prior criminal convictions. The trial court then found the defendant guilty of the crime of burglary.

Subsequently, the court denied the defendant's motion for a new trial and proceeded to a hearing on the issue of sentencing. At the sentencing hearing, the State relied upon the defendant's criminal history and the nature and circumstances of his conduct. The presentence report and criminal history report disclosed that the defendant had been convicted of a number of felonies:

(1) On May 8, 1978, the defendant was charged with armed robbery. He was subsequently convicted on this charge.

(2) Six months later, on October 13, 1978, the defendant was charged with attempted murder and was subsequently convicted. On February 1, 1979, the defendant pleaded guilty to both armed robbery and attempted murder and was sentenced to concurrent terms of seven years' imprisonment.

(3) On April 22, 1985, he was charged with robbery. He was found guilty and was sentenced to three years' imprisonment.

(4) On March 29, 1990, the defendant was charged with possession of a controlled substance. He was found guilty and was sentenced to one year's imprisonment.

(5) On October 10, 1990, the defendant was charged with attempted burglary. He was found guilty and was sentenced to three years' imprisonment.

In mitigation, defense counsel told the court that prior to his arrest, the defendant was the primary caretaker of his daughter. Counsel informed the court that the defendant received his general equivalency diploma (GED) in 1985. Counsel also asked for a short sentence because this was not a violent felony and "practically no damage was committed to the property."

The trial court then sentenced the defendant to 15 years' imprisonment. The defendant appeals his conviction and sentence.

Initially, the defendant contends that he was not proved guilty of burglary beyond a reasonable doubt. He argues that the State failed to prove the element of intent where the evidence showed that he did not possess any burglary tools or items that could be used as burglary tools, and the State did not show that the coin-operated laundromat contained anything capable of being stolen.

The elements of burglary that must be proved at trial are (1) that the defendant entered a building without authority and (2) that the defendant did so with an intent to commit a theft. (*People v. Perruquet* (1988), 173 Ill. App. 3d 1054, 1059-60, 527 N.E.2d 1334, 1338.) Circumstantial evidence may be used to prove the defendant's intent

to commit theft. *People v. Boguszewski* (1991), 220 Ill. App. 3d 85, 87-88, 580 N.E.2d 925, 926.

We believe that resolution of the issue that is presented by the defendant is controlled by the analysis employed in *People v. Richardson* (1984), 104 Ill. 2d 8, 470 N.E.2d 1024. In *Richardson*, a case very similar to the case before us, the only question before our supreme court was whether there was sufficient evidence to infer that the defendant had the requisite intent to sustain a conviction for burglary.

In *Richardson*, the police found the defendant in a supply closet in the Eagles Club at 3 a.m. A search of the premises revealed that nothing was missing from the club. The defendant was subsequently found guilty of burglary, but, on appeal, he argued that he could not have had the necessary intent to commit theft. The court rejected this argument. First, the court noted that intent may be inferred from the surrounding circumstances. After reviewing the evidence, the court concluded that the jury could reasonably infer that the defendant possessed the intent to commit theft, explaining, "In a burglary case, the relevant surrounding circumstances include the time, place and manner of entry into the premises, the defendant's activity within the premises, and any alternative explanations offered for his presence." *Richardson*, 104 Ill. 2d at 13, 470 N.E.2d at 1027.

■ We therefore apply the "surrounding circumstances" factors articulated in *Richardson* to the case at bar. The evidence established that the defendant entered the laundromat at about 12:30 a.m., although the defendant knew that the laundromat was not open at that time. The defendant entered the laundromat by pulling back the boarded-up bottom portion of the glass door and crawling inside despite the activation of a burglar alarm. The defendant explained that he entered the laundromat to use the rest room. However, his explanation was inconsistent with his earlier conduct that evening of retreating to an alley when he needed to relieve himself.

In a trial for burglary, the determination of the question of intent is for the trier of fact and will not be disturbed on review unless the evidence is so improbable that there exists reasonable doubt as to the defendant's guilt. (*People v. Cabrera* (1987), 116 Ill. 2d 474, 493, 508 N.E.2d 708, 716.) After reviewing the evidence presented in this case, we conclude that it is not improbable and we therefore decline to disturb the trial court's determination of guilt.

The second issue raised by the defendant is whether his sentence was proper. Because of several prior convictions, the defendant was sentenced to 15 years' imprisonment, pursuant to section 5—5—3(c)(8) of the Unified Code of Corrections. (Ill. Rev. Stat. 1991, ch. 38,

par. 1005—5—3(c)(8).) "To be sentenced under [section 5—5—3(c)(8)], a defendant must have previously been twice convicted of a Class 2 or greater class felony, and the commission and conviction dates of the prior felonies must have occurred in the chronological order mandated by the statute." *People v. Williams* (1992), 149 Ill. 2d 467, 473, 599 N.E.2d 913, 915.

■ The defendant first argues that, although the facts in the record show that the defendant had prior convictions, the record does not show the date of the acts allegedly underpinning those convictions. However, after the court sentenced the defendant to 15 years, defense counsel never objected to or complained that the presentence report was deficient because it did not contain the dates upon which the felonies were committed. The failure to bring this alleged deficiency to the attention of the trial court results in the waiver of the issue on review. *Williams*, 149 Ill. 2d at 493, 599 N.E.2d at 925.

Even if this argument was not waived, the State need not prove the dates of the offenses or the dates of the convictions beyond a reasonable doubt. (*Williams*, 149 Ill. 2d 467, 599 N.E.2d 913.) While addressing this precise issue, the Illinois Supreme Court has noted: "Defendant['s] prior criminal records were evidenced by a presentence report and the Class X provision of the Unified Code does not require more formal proof." (*Williams*, 149 Ill. 2d at 487-88, 599 N.E.2d at 922.) When sentencing this defendant, the trial court had before it the presentence report. Relying on *Williams*, then, we conclude that no error was committed when this defendant was sentenced.

The defendant asserts, however, that this case is controlled by *People v. Parks* (1988), 168 Ill. App. 3d 978, 523 N.E.2d 130. In *Parks*, the appellate court remanded the matter because there was no evidence in the certified copies of conviction of the dates on which the offenses were committed. However, *Parks* does not control our discussion, as it has been implicitly overruled by *People v. Williams* (1992), 149 Ill. 2d 467, 599 N.E.2d 913.

The defendant also argues that the trial court erred in failing to consider certain mitigating factors when sentencing him. We disagree.

The sentencing decisions of a trial judge are entitled to great deference and weight (*People v. Streit* (1991), 142 Ill. 2d 13, 18, 566 N.E.2d 1351, 1353) and will not be disturbed on review absent an abuse of discretion. (*People v. Williams* (1994), 265 Ill. App. 3d 283, 290, 638 N.E.2d 345, 350.) When a trial court imposes a sentence, there is a presumption that it has considered all evidence of mitigation that has been argued before it. (*People v. Rodriguez* (1993), 254

Ill. App. 3d 921, 931, 627 N.E.2d 209, 217.) "The court has no obligation to recite and give value to each fact presented at the sentencing hearing." *People v. Partin* (1987), 156 Ill. App. 3d 365, 373, 509 N.E.2d 662, 667.

■ The defendant presented evidence in mitigation which included the fact that he was the caretaker of his three-year-old daughter and that he had received his GED while incarcerated. Although the trial court did not specifically mention this evidence when sentencing the defendant, it is presumed that the trial court considered it. However, the evidence in mitigation could not overcome the fact that the defendant has been convicted for committing five felonies.

Where a sentence is within the statutory limits, there is a rebuttable presumption that it is proper. This presumption is only overcome "by an affirmative showing that the sentence imposed varies greatly from the purposes and spirit of the law." (*People v. Chambers* (1994), 258 Ill. App. 3d 73, 92, 629 N.E.2d 606, 620.) For a Class X felony, the defendant could have been sentenced to not less than 6 years but not more than 30 years. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)(3).) The trial court sentenced the defendant to 15 years' imprisonment. This sentence clearly falls within the statutory guidelines and the defendant has not affirmatively shown us that this sentence was improper. A 15-year sentence may seem harsh in this instance. However, in light of this defendant's past criminal history, we cannot find that the trial court abused its discretion in imposing this sentence.

For the above reasons, the judgment of the circuit court is affirmed.

Affirmed.

HOFFMAN, P.J., concurs.

JUSTICE CAHILL, dissenting:

I do not believe the record before us can be read to find that Juan Ybarra intended to burgle Ahmed Awad's Queen Wash Launderette. The record I reviewed fully supports Ybarra's explanation that when the police observed him pull back the boarded-up bottom of a broken glass door and scramble inside the launderette, he was intent on finding a urinal, nothing more.

Gaylord Richardson, upon whose case the majority relies, is a different character altogether in the history of Illinois criminal law. Though Richardson's beer and cigarettes were in plain view in the

Eagles Club bar, tending to support a theory that he had lingered unnoticed after closing hours, Richardson could not explain hiding in a supply closet where the police, in response to a silent alarm, found him. Nor could he overcome evidence that the boards blocking a window had been removed—a window the supreme court noted was hidden from view from the street. Evidence of surreptitious entry and subsequent stealth were fatal to Richardson's innocent explanation of his behavior.

Juan Ybarra, on the other hand, undertook the first steps of his alleged burglary on North Avenue in Chicago, in full view of two police officers and with an alarm ringing in his ears.

The cunning and guile of burglars is overrated, or the police would not catch so many of them. But some evidence of cunning and guile are hallmarks of intent of even the most hapless burglar. Juan Ybarra was hapless, but I do not believe he was a burglar. I respectfully dissent.