THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALLEN COSBY, Defendant-Appellant.

First District (2nd Division)   No. 1—97—4569

Opinion filed May 18, 1999.

Rita A. Fry, Public Defender, of Chicago (James N. Perlman, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and Barbara Plitz, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE GORDON delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, defendant Allen Cosby was found guilty of attempted first-degree murder (720 ILCS 5/8—4, 9—1 (West 1992)); attempted aggravated criminal sexual assault (720 ILCS 5/8—4, 12—14(a)(1) (West 1994)); aggravated battery with a firearm (720 ILCS 5/12—4.2(a)(1) (West 1992)); two counts of aggravated battery (720 ILCS 5/12—4(a) (West 1994) (aggravation based on great bodily harm), 720 ILCS 5/12—4(b)(8) (West 1994) (aggravation based on fact that battery occurred on a public way)); one count of felony violation of the Firearm Owner's Identification Card Act (430 ILCS 65/2(a)(1), 14(c)(3) (West 1994)); two counts of unlawful use of a weapon by a felon (720 ILCS 5/24—1.1(a) (West 1994)); one count of unlawful use of a weapon on a public way (720 ILCS 5/24—1(a)(10) (West 1994)); and two counts of armed violence (720 ILCS 5/33A—2, 12—4(a), 12—4(b)(8) (West 1994) (use of a weapon during the commission of aggravated battery)). Defendant was sentenced to 30 years' imprisonment for his conviction for attempted murder; five years' imprisonment for the violation of the Firearm Owner's Identification Card Act; and 30 years' imprisonment for armed violence, all to run concurrently; and 15 years' imprisonment on the attempted aggravated criminal sexual assault conviction to run consecutively to the above sentences. Defendant appeals. For the reasons given below, we affirm in part, reverse in part, and remand.

## FACTS

Defendant waived his right to a jury trial, and the case was tried to the bench in July 1997. The State's primary witness was the victim, Rosalyn Brown. Brown testified that she encountered the defendant in the early morning hours of August 2, 1996, around 3:30 a.m. Brown stated that at this time she was in a grocery store buying alcohol with a man she knew only as Harold. The defendant, who was in the store, followed her and Harold out of the store, fired a gun at the ground,

and said to her, "I want some p-ssy, b-tch."[1] Brown and Harold walked away from the defendant, to the house of Brenda Allen, a friend of Brown's, near the store, where there were some people drinking on the porch. Brown admitted that she had been drinking since she had gotten up on the morning of August 1 and she had consumed about 10 "bags" of crack cocaine on that day as well.

Brown testified that defendant followed her to Allen's house; it appeared that Allen and the defendant knew each other. However, Brown stated that at some point the people on the porch scattered; most ran into Allen's house and Harold ran elsewhere.[2] She left Allen's residence and began to walk home, in the direction of Honore Street; the defendant followed her. Brown then corrected her earlier testimony and stated that it was actually at this point, rather than earlier outside the store, that the defendant made the statement regarding wanting some "p-ssy." Brown stated that she eventually began to tell the defendant that she was "going to give it to" him, in order to, in her words, "bide my time, you know, try to save my life."

A confrontation occurred between the two in the area of 5922 Honore. Brown stated that the defendant pointed the gun at her neck and she began to struggle with him, trying to knock the gun out of his hands; he fired the gun, shooting her in the neck. The two continued to fight, and defendant shot her again, this time grazing her left hand. Although Brown was still standing at this point, she fell to the ground after defendant began to beat her in the head with the gun. Defendant continued to beat her even after she was on the ground; at some point during the beating she lost consciousness. She regained consciousness in an ambulance that was taking her to a hospital.

The State next called Chicago police officer Rodney Smith. Officer Smith testified that he was called to the area of 5922 South Honore at approximately 3:30 a.m. on August 2, 1996, in response to a radio dispatch of a report of shots fired. When he and his partner arrived at the scene, the officer observed a man straddling a woman in the street. Officer Smith testified that it first appeared that the man was punching the woman in the face, but as they drove closer he realized that the man was in fact hitting the woman in the head with an object he

---

[1] At another point in her testimony Brown corrected herself and stated that defendant actually made this statement a short time later, as we will note in the text.

[2] It is not clear what precipitated the people scattering. Brown stated at one point that while on the porch she "notice[d] that he had a gun," after which Allen and her friends ran into the house; however, at another point, she stated that defendant was not shooting on the porch and while he was on the porch the gun was out of sight (she believed he had put it in his pants).

was holding in his hand. He saw the man strike the woman at least three times.

Officer Smith testified that once their car got within a car length of the assault, the man (whom he identified as defendant) got up and ran. Smith exited the car and followed the defendant as he ran through a gangway between two houses. Although he lost sight of defendant for a short while as defendant made a sharp turn out of the gangway, he caught up shortly thereafter to find the defendant already in the custody of another officer, Officer Hopkins. Officer Smith testified that he handcuffed the defendant as Officer Hopkins retrieved a gun from the ground near the defendant.

After the defendant was in custody, the officers returned to the victim. Officer Smith testified that the victim's face was bloody and that she was placed into an ambulance when it subsequently arrived. He stated that he did not speak with the victim, although she did speak to some of the other officers. Smith testified that he did not hear the entire conversation; he admitted that he did not hear Brown state that her assailant pulled out a gun at two different times.

Chicago police officer Diana Hopkins testified that she also responded to the call of shots fired at 5922 South Honore and drove to the area with her partner. She also arrived at the scene while the assault was occurring and saw the assailant get up and run. Officer Hopkins drove down an alley to position herself to cut off the suspect's escape and got out of her car. She saw the individual she had seen beating the woman, whom she identified as the defendant, running towards her with a gun in his hand. She ran toward him and told him to drop the weapon; he did so. The other officers chasing defendant arrived shortly thereafter and placed him in custody. Officer Hopkins stated that while defendant was being arrested he was "rambling the entire time that he hopes the b-tch dies. He beat the b-tch. He hopes that she dies." Hopkins testified that the defendant continued to make statements to the same effect after he had been given *Miranda* warnings and transported to the station.

After defendant was placed in custody, Officer Hopkins retrieved the revolver he had dropped. The gun contained three spent cartridges and no other ammunition; the butt of the gun was entirely broken off. Hopkins later located the butt of the gun on Honore Street by the victim. She stated that the victim was bloody and bruised and "semiconscious"; she seemed unaware of what was occurring and kept repeating that she had been shot. Hopkins stated that she did not speak with the victim or ask her any questions at that time, although she did speak with her later at the hospital.

The parties stipulated that if called to testify Dr. Phillip Zaret

would testify that he treated the victim at Mount Sinai Hospital and diagnosed her with a gunshot wound to the left side of the neck and a probable fracture of the left hand. He would also testify as to the presence of numerous abrasions on the forehead and multiple lacerations. He would finally testify that bullet fragments remained inside the victim and that the victim was discharged on August 3. The parties also stipulated that the defendant had previously been convicted of home invasion and related charges.

The defense presented no evidence, and the court found defendant guilty on all counts. Although the court recognized that Brown was a "less than perfect" witness because of her admitted drug and alcohol use on the date in question, it noted that her testimony was significantly corroborated by the officers' testimony of seeing the defendant beating the victim with the gun; the recovery of the gun from defendant (and the butt of the gun near the victim); and the defendant's own statement that he beat the victim and he hoped she died. The court stated that it had

> "no idea why the defendant did what he did other than he was attempting to have sex with the victim because she was high on alcohol and drugs and maybe seemed like an easy mark. ***
>
> All I do have before me is testimony from the victim and the two police officers in that regard, and as I say, he makes the statement after the fact that he did beat her and hoped she dies.
>
> What infuriated him to that extent, I don't know. The [S]tate believes it is because she refused sexual advances when he demanded p-ssy from her, demanded sex from her. That is a reasonable explanation."

In a subsequent hearing on defendant's motion for a new trial (which was denied), the court stated that it "absolutely believe[d] her [(the victim)] in her testimony, and did so" at the time of trial. With respect to the attempted aggravated sexual assault count, the court explicitly stated that it found that defendant's actions of pursuing the victim, shooting her and beating her all "occurred because of his desire for sex at any cost with the victim."

The court denied defendant's motion for a new trial and, after hearing testimony and argument in aggravation and mitigation, sentenced him to 30 years' imprisonment for the attempted murder conviction; 30 years for the armed violence conviction; and 5 years for the violation of the Firearm Owner's Identification Card Act, sentences to run concurrently. The court also sentenced defendant to 15 years' imprisonment for the attempted aggravated criminal sexual assault charge, sentence to run consecutively to the 30-year term.

Defendant now appeals his convictions and sentence. He contends

that (1) his conviction for attempted aggravated criminal sexual assault must be reversed because the State failed to prove he took a "substantial step" toward the commission of the offense; (2) his armed violence convictions should be vacated because they are "carved out of the same act" as his attempted murder conviction and, because armed violence carries a greater minimum sentence than attempted first degree murder, his armed violence convictions must be vacated as violative of the Illinois Constitution's guarantees of due process of law and proportionate penalties; (3) his conviction for violation of the Firearm Owner's Identification Card Act should be reversed because that statute has been found unconstitutional by our supreme court; and (4) the case should be remanded with directions that he be given day-for-day good time credit, because the truth-in-sentencing provisions under which he was sentenced are unconstitutional. On a cross-appeal the State contends that the case must be remanded for resentencing because the trial court erred in sentencing defendant concurrently for attempted murder and armed violence; the State argues that the court was required to impose consecutive sentences for defendant's convictions for attempted murder, attempted aggravated criminal sexual assault, and armed violence.

## ANALYSIS

### I. SUFFICIENCY OF EVIDENCE OF ATTEMPTED AGGRAVATED CRIMINAL SEXUAL ASSAULT

Defendant's first contention on appeal is that the State did not prove him guilty beyond a reasonable doubt of the offense of attempted aggravated criminal sexual assault. Specifically, he contends his conviction on this count must be reversed because the State failed to prove he took a "substantial step" toward the completion of the sexual assault crime. We disagree and affirm his conviction.

The two elements of the offense of attempt to commit another crime are that the defendant had the specific intent to commit the underlying offense and that defendant took a substantial step toward completing the offense. *People v. Echols*, 282 Ill. App. 3d 185, 189, 668 N.E.2d 35, 37 (1996); *People ex rel. Spencer v. One 1978 Pontiac Automobile, VIN No. 2L69Y8P243561*, 242 Ill. App. 3d 411, 413, 610 N.E.2d 142, 143 (1993). "A person commits an attempted aggravated criminal sexual assault when 'with intent to commit [aggravated criminal sexual assault], he does any act which constitutes a substantial step toward the commission of that offense.' " (Brackets in original.) *People v. Todd*, 154 Ill. 2d 57, 74, 607 N.E.2d 1189, 1197 (1992), quoting Ill. Rev. Stat. 1989, ch. 38, par. 8—4 (now 720 ILCS 5/8—4 (West

1994)). The question of a defendant's intent is for the trier of fact "and [its determination] will not be disturbed on review unless the evidence is so improbable that there exists reasonable doubt as to the defendant's guilt." *People v. Ybarra*, 272 Ill. App. 3d 1008, 1011, 651 N.E.2d 668, 671 (1995). Accord *People v. Testa*, 261 Ill. App. 3d 1025, 1031, 633 N.E.2d 1361, 1366 (1994) ("[t]he nature of defendant's intent was a factual question for the jury to decide"); *People v. Pertz*, 242 Ill. App. 3d 864, 903, 610 N.E.2d 1321, 1346 (1993) ("[t]he question of defendant's state of mind at the time of the crime was a question of fact to be determined by the jury"); *People v. Mays*, 230 Ill. App. 3d 748, 756, 595 N.E.2d 1088, 1094 (1992) ("[t]he question of intent was for the trier of fact"). Defendant does not directly challenge the court's determination that he had the requisite intent to be found guilty of attempted aggravated criminal sexual assault, but even if he had done so, we would not find the trial court's conclusion that defendant's attack was initially motivated by his desire to have sex with the victim to be improbable or unlikely.

Also, although defendant again does not raise the issue, we note that the trial court's statement at the hearing on the motion for new trial that all of defendant's actions "occurred because of his desire for sex at any cost with the victim" might appear inconsistent with the court having found defendant guilty of attempted murder. Like any attempted crime, attempted murder requires the specific intent to commit the underlying felony. *People v. Allen*, 153 Ill. 2d 145, 154, 606 N.E.2d 1149, 1153 (1992) ("[a]ttempted murder requires the State to prove beyond a reasonable doubt that the defendant, with the specific intent to commit murder, does any act which constitutes a substantial step toward the commission of murder"). If defendant's intent throughout the assault had remained the same—to obtain sex from the victim—he could not have had the requisite intent to have committed attempted murder.

However, we are not compelled to find any inconsistency here. The trial court's statement at the hearing on the motion for new trial must be viewed in context. The court had previously stated in the course of rendering its verdict that the defendant had become infuriated to the point of intending to kill the victim because of the victim's refusal of his sexual advances. Accordingly, the statement at the hearing on the motion for new trial that everything had occurred "because of" defendant's desire to have sex with the victim is properly understood as meaning that the entire sequence of events would not have transpired but for defendant's initial desire to have sex with the victim. It is clear from the court's statements at the close of evidence that it found that defendant's intent had at some point changed to a

desire to kill the victim, although this desire was *related* to his desire to have sex with her, in that he was retaliating for her refusal to give in to his demands. This understanding of the court's statement is also buttressed by a comment made by the court at sentencing:

"If the desire which the defendant stated to have sex with the victim at all costs, if that objective changed when he shot her in the neck and armed with a gun and beat her in the face with it changed to something else, *obviously he was convicted of attempt murder*—

[(interruption by defense counsel)]

THE COURT: Then section b [of section 5—8—4 of the Unified Code of Corrections (730 ILCS 5/5—8—4 (West 1994))] would apply in which case consecutive sentencing would be appropriate only if the court *** is of the opinion that a consecutive term is required to protect the public ***." (Emphasis added.)

We find that when read in context the court's remark should not be understood as a statement that throughout the entire attack defendant's intent was to have sex with the victim but, rather, that defendant's attack would not have occurred in the first place but for his initial intent to have sex with the victim, later changing to a retaliatory intent to kill her.

Furthermore, even if the court's statement at the hearing on defendant's posttrial motion were not susceptible to this interpretation, it is well established that a reviewing court may affirm a trial court's decision on any grounds in the record. *People v. Dilworth*, 169 Ill. 2d 195, 205, 661 N.E.2d 310, 316 (1996); *People v. Thomas*, 164 Ill. 2d 410, 419, 647 N.E.2d 983, 988 (1995). It is the judgment of the trial court from which an appeal is brought, rather than the reasoning the court employed; we are not required to accept the trial court's *posthoc* reasons for its decision (see *People v. Smith*, 299 Ill. App. 3d 1056, 1065, 702 N.E.2d 218, 224 (1998) (refusing to reverse conviction because of trial court's "erroneous statement [of fact] at the hearing on the posttrial motion," since there was no indication that the court held the erroneous belief "when deciding [the defendant's] guilt at trial")), and if the trial court reached the correct result, we may affirm notwithstanding that its reasoning was incorrect. *People v. Everette*, 141 Ill. 2d 147, 158-59, 565 N.E.2d 1295, 1300 (1990). Accord *People v. Weninger*, 292 Ill. App. 3d 340, 345, 686 N.E.2d 24, 28 (1997) ("since the trial court reached the correct result, its stated reasons, even if erroneous, do not entitle the defendant to relief on appeal").

■ In this case the court adjudged defendant guilty of attempted aggravated criminal sexual assault and attempted murder. This result is readily sustainable on the basis of the evidence adduced. Given

defendant's initial demand of the victim, it is a valid inference that defendant's initial acts of threatening the victim with a gun and, indeed, the initial shooting, were committed in furtherance of his desire for sexual relations with her and constituted a substantial step toward that end. However, it was also entirely reasonable to conclude that at some point during his assault, at least by the time that he was beating the victim in the head with the gun as she lay semi-conscious in the street, the defendant's motivation had transformed from a desire for sex to a desire to kill the victim for not acceding to his demands. The fact finder may infer intent from " 'the character of the defendant's acts and the circumstances surrounding the commission of the offense. [Citation.] The defendant is presumed to intend the natural and probable consequences of his acts ***.' " (Omission in original.) *People v. Foster*, 168 Ill. 2d 465, 484, 660 N.E.2d 951, 960 (1995), quoting *People v. Terrell*, 132 Ill. 2d 178, 204, 547 N.E.2d 145 (1989). Accord *People v. Smeathers*, 297 Ill. App. 3d 711, 717, 698 N.E.2d 181, 185 (1998). The court's determination that defendant did at some point form the intent to kill the victim is a valid inference from the ongoing serious nature of the attack and from the defendant's own statement after his arrest that he hoped the victim would die. Neither the conclusion that defendant initially had the intent to commit aggravated criminal sexual assault nor the conclusion that defendant formed the intent to commit murder "is so improbable that there exists reasonable doubt as to the defendant's guilt." See *Ybarra*, 272 Ill. App. 3d at 1011, 651 N.E.2d at 671 (and other authorities cited above).

■ Defendant contends, however, that the State did not prove the second element of attempted aggravated criminal sexual assault, that he took a substantial step toward the commission of the crime, because there was no showing that he removed his clothing or that of the victim or made any genital contact with her. In his argument defendant principally relies on *People v. Montefolka*, 287 Ill. App. 3d 199, 678 N.E.2d 1049 (1997). In *Montefolka* the victim, clad only in a nightgown and underwear, awoke and went downstairs to find the defendant in her home. She screamed and ran toward the front door. The defendant caught her, prevented her from leaving, and choked her as the two struggled. During the struggle defendant twice ordered the victim to remove her underwear; both times she refused. Eventually, defendant agreed to leave after the victim gave him all her money. A panel of this court reversed that defendant's conviction for attempted aggravated criminal sexual assault. Analogizing to case law precedent

(*People v. Bush*, 19 Ill. 2d 151, 166 N.E.2d 91 (1960)[3]; *People v. Rayfield*, 171 Ill. App. 3d 297, 525 N.E.2d 253 (1988); *People v. Pitts*, 89 Ill. App. 3d 145, 411 N.E.2d 586 (1980)), the court determined that defendant's actions did not constitute a substantial step towards the commission of aggravated criminal sexual assault. See *Montefolka*, 287 Ill. App. 3d at 207-11, 678 N.E.2d at 1054-57.

We reach a different result than *Montefolka* for a number of reasons. First, *Montefolka* is distinguishable on its facts. That court reached the conclusion it did because it found its case substantially identical to *Rayfield*, in that "both cases involved unlawful entry, physical assault, victims wearing nightgown/nightshirt, requests to see the victim's vagina or for victim to remove her underwear, followed by conversation and relatively nonthreatening parting of ways." *Montefolka*, 287 Ill. App. 3d at 210, 678 N.E.2d at 1056. In the instant case, on the other hand, the defendant made a direct hostile demand for sex coupled with a display of a weapon; when compliance with his demand was not forthcoming, he shot the victim and beat her until she was unconscious, and he did not desist from beating her until the police arrived on the scene. This is an entirely different scenario than was present in *Montefolka* and *Rayfield*.

In addition, even if *Montefolka* was not factually distinguishable, we would respectfully decline to follow it. In alignment with the *Montefolka* dissent, we view the authority upon which *Montefolka* relied with some degree of skepticism because of the time at which those cases were decided. See *Montefolka*, 287 Ill. App. 3d at 213, 678 N.E.2d at 1058 (Theis, J., concurring in part and dissenting in part). In the past, the standard of review of sex offense convictions has differed from that employed in review of other criminal cases: convictions were upheld only if the victim's testimony was "clear and convincing or substantially corroborated." See *People v. Schott*, 145 Ill. 2d 188, 198, 582 N.E.2d 690, 695 (1991) (and cases cited therein). However, in 1990 this standard was questioned in the appellate court (see *People v. Cole*, 193 Ill. App. 3d 900, 997-1001, 550 N.E.2d 723, 728-31 (1990) (Steigmann, J., specially concurring)), and in 1991 our supreme court abolished this test and held that even in sex offense cases the test for a reviewing court to employ " ' "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

---

[3]Although *Montefolka* noted that *Bush* reversed a conviction on similar facts, it stated that *Bush* seemed "out of touch with the views of modern courts and legislatures relating to crimes of sexual assault and abuse," and stated that it did "not rely upon [*Bush*] to reverse defendant's conviction." *Montefolka*, 287 Ill. App. 3d at 209, 678 N.E.2d at 1056.

could have found the essential elements of the crime beyond a reasonable doubt." ' " (Emphasis in original.) *Schott*, 145 Ill. 2d at 203, 582 N.E.2d at 696-97, quoting *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267 (1985), quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979). We are inclined to be somewhat cautious in relying on cases in which convictions were reversed under the more stringent but now outdated standard of review.

*Montefolka* itself declined to base its result on *Bush* because of that case's reliance on the outmoded standard of review. See *Montefolka*, 287 Ill. App. 3d at 209, 678 N.E.2d at 1056. Also, as the *Montefolka* dissent recognized, *Pitts* was decided under an outdated statute which penalized only forcible sexual intercourse. See *Montefolka*, 287 Ill. App. 3d at 213, 678 N.E.2d at 1058 (Theis, J., concurring in part and dissenting in part). Finally, we question the decision in *Rayfield*, upon which *Montefolka* relied most heavily. There the court refused to find that the defendant had the requisite intent to support a conviction for attempted sexual assault notwithstanding the facts that the defendant held the victim while she was wearing a nightgown, refused to let her go when she requested that he do so, covered the victim's mouth and threatened to kill her when she began to struggle and scream, picked her up and carried her towards the bedroom against her will and requested to see the victim's vagina. After her refusal, he left peacefully. Under these facts and under the present standard of review we would be most hesitant to conclude that no rational trier of fact could find the essential elements of the crime beyond a reasonable doubt (see *Schott*, 145 Ill. 2d at 202-03, 582 N.E.2d at 696-97), notwithstanding that the defendant ultimately left peacefully. Putting that aside, however, we submit that even if we accepted the result in *Rayfield*, it would not necessarily compel the conclusion in *Montefolka* that there was no proof of a "substantial step," because *Rayfield* based its result on its conclusion that the State had not proven that the defendant had the *intent* to commit a sexual assault. See *Rayfield*, 171 Ill. App. 3d at 300, 525 N.E.2d at 255 ("[t]his court does not condone the defendant's acts; however, they do not establish that he was possessed with the intent to commit the specific offense of criminal sexual assault"). Intent to commit a specific offense and the taking of a substantial step towards commission of the offense are distinct and different elements of the crime of attempt, and a finding that intent could not be inferred from certain conduct does not of necessity denote that the conduct could not constitute the taking of a substantial step toward commission of that offense if intent were otherwise established.

In the instant case the trial court determined that defendant

intended to have sex with the victim "at any cost." As we previously noted, defendant has not directly challenged this statement, and even if he had done so, we would affirm the result that the trial court reached. We find that, given this context, defendant's attack on the victim constituted a substantial step toward the commission of the offense of aggravated criminal sexual assault. See *People v. Jones*, 175 Ill. 2d 126, 134, 676 N.E.2d 646, 650 (1997) (holding that defendant took a substantial step toward the commission of aggravated criminal sexual abuse by disrobing and requesting sexual conduct from the victim, notwithstanding that no force was used, the victim never undressed, and no sexual contact occurred); *People v. Otkins*, 114 Ill. App. 2d 439, 446, 252 N.E.2d 906 (1969) (defendant's act of choking victim and dragging her off the street held sufficient to sustain a conviction for attempted rape where defendant did not cease his attack until interrupted by the police, notwithstanding that: defendant did not touch any intimate parts of her body and did not try to kiss her; defendant's body was not touching the victim's body during the assault; and he never attempted to remove her clothing). We note that the *Otkins* court upheld the conviction for attempted rape notwithstanding the more stringent standard of review applicable at the time the case was decided.

## II. DISPROPORTIONATE PENALTIES AND INCLUDED OFFENSES

Defendant's next contention on appeal is that his two convictions for armed violence must be reversed. Defendant suggests first that his convictions for armed violence must be vacated because they carry a heavier penalty than his conviction for attempted murder and, consequently, violate the proportionate penalties clause (Ill. Const. 1970, art. I, § 11) and the due process clause (Ill. Const. 1970, art. I, § 2) of the Illinois Constitution of 1970. We disagree.

■ All statutes are presumed constitutional, and the party bringing a constitutional challenge to a statute has the burden of clearly establishing a constitutional violation. *People v. Lombardi*, 184 Ill. 2d 462, 468, 705 N.E.2d 91, 95 (1998). We must affirm a statute's constitutionality and validity if reasonably possible. *People v. Lee*, 167 Ill. 2d 140, 144, 656 N.E.2d 1065, 1067 (1995). Where offenses have different purposes, we will presume that the legislature considered different factors in establishing the penalties imposed for those offenses, and we will defer to its judgment in the context of a proportionate penalties challenge. *Lombardi*, 184 Ill. 2d at 476, 705 N.E.2d at 99. The language of a statute is the best indication of the legislature's intent. *Lombardi*, 184 Ill. 2d at 477, 705 N.E.2d at 99.

■ Although due process and disproportionate penalties challenges are often brought together, they raise different questions. The due process clause provides that "[n]o person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws." Ill. Const. 1970, art. I, § 2. The only question raised by a due process challenge to the penalty imposed by a criminal statute is whether the challenged penalty is "reasonably related to the purpose of the statute containing the penalty." *Lombardi*, 184 Ill. 2d at 471, 705 N.E.2d at 96, citing *People v. Hickman*, 163 Ill. 2d 250, 644 N.E.2d 1147 (1994). The proportionate penalties clause provides in relevant part that "[a]ll penalties shall be determined *** according to the seriousness of the offense." Ill. Const. 1970, art. I, § 11. A challenge to a statute based on this constitutional provision may involve any of three different analyses:

"First, a penalty violates the proportionate penalties clause if it is ' " 'cruel,' 'degrading' or so 'wholly disproportionate to the offense committed as to shock the moral sense of the community.' " ' [Citations.] Second, a penalty is invalid under the proportionate penalties clause where similar offenses are compared, and conduct that creates a less serious threat to the public health and safety is punished more severely. [Citations.] Third, there is a violation of the proportionate penalties clause when identical offenses are given different sentences." *Lombardi*, 184 Ill. 2d at 474, 705 N.E.2d at 98.

In this case defendant challenges his armed violence convictions only under the second analysis noted in *Lombardi*: he contends that his convictions should be reversed because the minimum sentence for armed violence is 15 years, whereas the minimum sentence for attempted first degree murder is only 6 years.

■ First, we find no merit to defendant's due process challenge. " 'The presence of a weapon enhances the danger that any felony that is committed will have deadly consequences should the victim offer resistance.' " *Lombardi*, 184 Ill. 2d at 470, 705 N.E.2d at 96, quoting *People v. Alejos*, 97 Ill. 2d 502, 508, 455 N.E.2d 48 (1983). As *Lombardi* observed, the legislature could reasonably have determined, based on this fact, "that the stringent penalties prescribed by the armed violence statute were necessary to achieve its objective of discouraging offenders from carrying weapons when committing a felony." *Lombardi*, 184 Ill. 2d at 470-71, 705 N.E.2d at 96. Under the *Lombardi* analysis we find no due process violation in the legislative determination regarding the appropriate minimum sentence when aggravated battery is committed with a weapon. See *Lombardi*, 184 Ill. 2d at 473, 705 N.E.2d at 97 ("defendants have failed to satisfy their

burden of demonstrating that the penalty for armed violence predicated on possession of a controlled substance or residential burglary while armed with a Category I weapon violates due process").

■ Nor do we find merit in defendant's proportionality challenge. Defendant contends that the armed violence statute is unconstitutional because it provides for a minimum sentence of 15 years when a perpetrator is armed with a "Category I" weapon (including firearms) (see 720 ILCS 5/33A—3(a) (West 1994)), whereas the minimum sentence for attempted first degree murder is merely 6 years (see 720 ILCS 5/8—4(c)(1) (West 1994) (attempted first degree murder is sentenced as a Class X felony); 730 ILCS 5/5—8—1(a)(3) (West 1994) (sentence for Class X felony is 6 to 30 years' imprisonment)). However, we believe the legislature was within its prerogative in assigning different penalties to armed violence and attempted murder.

When a defendant raises a proportionality challenge to a statute based on a lesser penalty imposed for a similar but allegedly more serious offense, there is a two-step inquiry:

"(1) whether the purposes of the compared offenses are 'distinct such that comparative proportionality review is not appropriate'; and (2) if the purposes are 'related,' whether the offense with the harsher penalty is more serious than the offense with the less severe penalty." *Lombardi*, 184 Ill. 2d at 475-76, 705 N.E.2d at 98, quoting *People v. Davis*, 177 Ill. 2d 495, 506, 687 N.E.2d 24 (1997).

We find defendant cannot satisfy the first of the two above requirements, because the penalties for armed violence and for attempted murder could serve different purposes. As previously noted, where statutes serve different purposes, we presume the legislature considered different factors in determining the penalties and defer to its judgment (*Lombardi*, 184 Ill. 2d at 476, 705 N.E.2d at 99), because the legislature "is more aware of the evils confronting our society [than the courts] and therefore is more capable of measuring the seriousness of various offenses." *People v. Koppa*, 184 Ill. 2d 159, 171, 703 N.E.2d 91, 98 (1998).

In *Koppa*, our supreme court rejected a proportionality challenge to the offense of armed violence. The defendant in that case compared armed violence to the offenses of aggravated criminal sexual abuse and aggravated kidnapping, which carried a lesser minimum sentence. *Koppa*, 184 Ill. 2d at 171-72, 703 N.E.2d at 98. The court rejected the defendant's contention that the penalties were disproportionate, because

"[t]he offense of armed violence always involves a weapon, whereas the offenses of aggravated criminal sexual abuse and aggravated kidnapping do not ***. *** Given the required presence of a weapon

for an armed violence offense, the legislature reasonably could have decided to impose a more stringent penalty because of the high risk of bodily harm associated with the presence of a weapon. We will not disturb the legislature's determination that such conduct is worthy of a greater penalty." *Koppa*, 184 Ill. 2d at 172, 703 N.E.2d at 98.

*Koppa* explicitly rejected the defendant's claim that the armed violence and the aggravated criminal sexual abuse and aggravated kidnapping statutes all served the same purpose, of deterring and punishing the use of a weapon while committing a felony. The court noted that although this was the purpose of the armed violence statute, "[t]he same purpose does not exist for aggravated criminal sexual abuse and aggravated kidnapping, which can arise in situations where a weapon is not involved. Thus, it can be presumed that the legislature considered different factors in enacting the penalty provision for armed violence than for aggravated criminal sexual abuse and aggravated kidnapping." *Koppa*, 184 Ill. 2d at 172-73, 703 N.E.2d at 98-99.

*Koppa* and *Lombardi* dispose of defendant's proportionality challenge in this case. Defendant contends that his convictions for armed violence (based on aggravated battery) violate the proportionate penalties clause because they carry a greater penalty than attempted murder. But the statutes do not serve the same purpose. Whereas armed violence is intended to prevent persons from carrying dangerous weapons when they commit a felony (*Koppa*, 184 Ill. 2d at 172, 703 N.E.2d at 98, citing *People v. Drakeford*, 139 Ill. 2d 206, 564 N.E.2d 792 (1990)), attempted murder does not serve the same purpose because that offense can be committed without the involvement of a weapon. *Koppa*, 184 Ill. 2d at 172-73, 703 N.E.2d at 98-99.

Defendant also contends that his armed violence convictions should be vacated as lesser included offenses of his attempted murder conviction. He cites *People v. Edwards*, 167 Ill. App. 3d 324, 521 N.E.2d 185 (1988), for the proposition that where a defendant stands convicted of both attempted murder and armed violence based on the same act, the armed violence conviction must be vacated because the attempted murder conviction is more specific.

We reject this argument. First, we note that if anything, it would be defendant's attempted murder conviction that would be vacated rather than the armed violence conviction. Where a defendant stands convicted of multiple offenses arising from the same physical act, it is the more serious offense upon which judgment should be entered and sentence imposed. *Edwards*, 167 Ill. App. 3d at 337, 521 N.E.2d at 194, citing *People v. Donaldson*, 91 Ill. 2d 164, 435 N.E.2d 477 (1982). Although *Edwards* determined that attempted murder was the offense

on which judgment should be entered, it did so because at the time that case was decided, attempted murder and armed violence carried an identical sentence of 6 to 30 years' imprisonment. *Edwards*, 167 Ill. App. 3d at 337, 521 N.E.2d at 194. The court therefore looked to the fact that attempted murder was the more "specific" of the two offenses, in that it required the specific intent to kill. *Edwards*, 167 Ill. App. 3d at 337, 521 N.E.2d at 194. Currently, however, armed violence (while armed with a category I weapon, as defendant was in this case) carries a minimum penalty of 15 years, whereas the minimum penalty for attempted murder is still 6 years. This would appear to represent a legislative determination that armed violence is a more serious offense than attempted murder; accordingly, if any of defendant's convictions were to be vacated in this case, it would be his conviction for attempted murder. See *People v. Duszkewycz*, 27 Ill. 2d 257, 261-62, 189 N.E.2d 299, 301 (1963) (finding that rape was a more serious offense than incest, based in part on the former being punishable by a prison term of one year to life, whereas the latter was punishable by a term of 1 to 20 years); *cf. People v. Mack*, 105 Ill. 2d 103, 137, 473 N.E.2d 880, 898 (1984) (noting *Duszkewycz* but concluding that its analysis was unhelpful: "the penalty provided by the legislature gives us no help in making the determination as to which of the three murder charges is the most serious because the penalty for all three may be death").

■ However, we find no reason to vacate any of defendant's convictions. The general rule is clear that when a defendant is convicted of multiple offenses:

> " 'Prejudice results to the defendant only in those instances where more than one offense is carved from the same physical act. Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses. *** "Act," when used in this sense, is intended to mean any overt or outward manifestation which will support a different offense.' " *People v. Rodriguez*, 169 Ill. 2d 183, 186, 661 N.E.2d 305, 306 (1996), quoting *People v. King*, 66 Ill. 2d 551, 566, 363 N.E.2d 838 (1977).

First, defendant's convictions are not subject to attack on the basis that defendant did not commit separate acts. It is clear that defendant committed multiple acts: the beating (which was charged as a single integrated act), and the shootings. The beating and shootings were all " 'overt or outward manifestation[s] which will support a different offense.' " *Rodriguez*, 169 Ill. 2d at 186, 661 N.E.2d at 306, quoting *King*, 66 Ill. 2d at 566. Defendant could properly have been convicted of armed violence for his acts of shooting the victim and attempted murder for his act of beating the victim into unconsciousness with the

gun. See *People v. Dixon*, 91 Ill. 2d 346, 356, 438 N.E.2d 180, 185 (1982) (in the course of a single beating "the separate blows, even though closely related, were not one physical act [citations] and support convictions and concurrent sentences for both aggravated battery and mob action"); *People v. Myers*, 85 Ill. 2d 281, 289, 426 N.E.2d 535, 538 (1981) (two separate knife attacks on victim constituted separate physical acts under *King* and thus each supported a separate conviction, "even though closely related by reason of the fact that they attacked the same area of his body and were close in time").

■ Further, neither attempted murder nor armed violence (based on aggravated battery) is a lesser included offense of the other. An included offense is an offense that is " 'established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged.' " *People v. Hamilton*, 179 Ill. 2d 319, 324, 688 N.E.2d 1166 (1997), quoting 720 ILCS 5/2—9(a) (West 1994). Illinois courts follow the "charging instrument" approach to included offense analysis. Under this approach we look to the instrument (in this case the information) by which defendant was charged to determine whether one offense is included in another. *Hamilton*, 179 Ill. 2d 319, 688 N.E.2d 1166. For one offense to be a lesser included offense of another, "[t]he instrument charging the greater offense, must, at a minimum, set out the main outline of the lesser offense." *People v. McLaurin*, 184 Ill. 2d 58, 104-05, 703 N.E.2d 11, 33 (1998), citing *People v. Jones*, 175 Ill. 2d 126, 676 N.E.2d 646 (1997). Defendant characterizes the information under which he was charged as alleging that he (1) committed attempted murder by beating the victim with a pistol and shooting her in the neck and arm; (2) committed aggravated battery by beating the victim with a pistol and shooting her in the neck and arm; and (3) committed armed violence by committing the felony of aggravated battery while armed with a dangerous weapon. Defendant argues that the same acts form the basis for the charges of attempted murder and armed violence (because the armed violence charges are predicated on the aggravated battery charges), and therefore the armed violence charges were included in the attempted murder charge under the charging instrument approach. We disagree.

First, we are dubious of defendant's argument, even accepting at face value his characterization of the charging instrument, because defendant was charged with multiple acts any of which in the alternative could have supported a conviction for the offense charged. In other words, the State did not have to prove that defendant shot the victim in the neck *and* shot the victim in the arm *and* beat the victim with the gun in order to prove he committed aggravated battery. It is

clear that proof of *any* of these acts would suffice to uphold that conviction. The same is true of attempted murder. See, *e.g., People v. Williams*, 165 Ill. 2d 51, 649 N.E.2d 397 (1995) (upholding attempted murder conviction based on the defendant beating the victim). It is far from clear that the inclusion of multiple alleged acts in different charges should make each offense charged a lesser included offense of the others, when any of the acts standing alone would constitute commission of any of the offenses charged and where, as here, there are sufficient acts for each conviction to be based on the commission of a different act. See *People v. Stokes*, 281 Ill. App. 3d 972, 981, 667 N.E.2d 600, 607 (1996) (rejecting an included analysis challenge to convictions for residential burglary and home invasion even though unlawful entry was charged in both counts, because the home invasion count charged the additional physical act of the infliction of intentional injury; "Given that Stokes' convictions were based on several separate and distinct acts, he was properly convicted of both offenses").

However, we need not rest our result on the foregoing analysis because defendant's characterization of the charging instrument is inaccurate. As previously noted, the armed violence charges were based on defendant committing aggravated battery while armed with a dangerous weapon.[4] But although the aggravated battery charges (upon which the armed violence charges were based) did mention the same acts as the attempted murder charge, each also contained an element not alleged in the attempted murder charge. Specifically, one of the aggravated battery counts charged that the defendant caused great bodily harm to the victim, and the other charged that the defendant attacked the victim on or about a public way.[5] Accordingly, the offense of attempted murder, as charged, did not include the charges of armed violence based on aggravated battery. *McLaurin*, 184 Ill. 2d at 105, 703 N.E.2d at 33 (instrument charging defendant with murder did not "'set out the main outline of'" home invasion for included offense analysis, notwithstanding that the charging instrument included in each charge the allegation that the defendant set a fire which caused the victim's death, because the home invasion charge included the additional allegation that the defendant entered the victim's dwelling

---

[4]It could be argued that the requirement that the State prove that defendant was armed with a dangerous weapon constitutes an element distinct from attempted murder such that our analysis could stop here. However, defendant could justifiably point out that the attempted murder charge alleged that the defendant shot the victim, which does implicitly allege that the defendant was armed with a gun.

[5]These allegations were not surplusage, but rather constituted essential elements of the charges. See 720 ILCS 5/12—4(a), 12—4(b)(8) (West 1994).

without authority, knowing that the victim was present). Although defendant has not so suggested, we note additionally that attempted murder is not a lesser included offense of armed violence because armed violence "does not require proof of the intent to kill necessary for the attempted-murder conviction." *Myers*, 85 Ill. 2d at 287, 426 N.E.2d at 537.

## III. FIREARMS OWNERS IDENTIFICATION CARD ACT

Defendant also contends that his conviction for possession of a firearm without compliance with the Firearm Owners Identification Card Act (430 ILCS 65/1 *et seq.* (West 1994)) (the Act) must be vacated because our supreme court has declared that statute unconstitutional. See *People v. Davis*, 177 Ill. 2d 495, 508, 687 N.E.2d 24, 30-31 (1997).

■ We disagree because, as the State observes, *Davis* did not declare the entire Act unconstitutional. Rather, it merely found unconstitutional the penalty for violations of the Act by a felon. *Davis*, 177 Ill. 2d at 508, 687 N.E.2d at 30-31. The court found that statutory provisions making a violation of the statute by a felon a nonprobationable Class 3 felony (see 430 ILCS 65/14(c)(3) (violation of the Act by a person ineligible to obtain a firearms owners card is a Class 3 felony); 430 ILCS 65/8(c) (felons are not eligible to obtain a firearms owner's card) (West 1994); 730 ILCS 5/5—5—3(c)(2)(N) (West Supp. 1995) (a felony violation of the Act is nonprobationable)) violated the proportionality clause when compared to the penalty imposed for the offense of possession of a weapon by a felon. *Davis*, 177 Ill. 2d at 508, 687 N.E.2d at 30-31. However, the court did not invalidate the entire Act.

Prior to January 1, 1995, any violation of the Act was a Class A misdemeanor. See 430 ILCS 65/14 (West 1994). On January 1, 1995, the legislature amended the statute to provide that certain violations thereof would be felonies. See Pub. Act 88—680, art. L, § 50—3, eff. January 1, 1995. The effect of an enactment of an unconstitutional amendment to a statute is to leave the law in force as it was before the adoption of the unconstitutional amendment. *People v. Gersch*, 135 Ill. 2d 384, 390, 553 N.E.2d 281, 283 (1990); *People v. Wilson*, 295 Ill. App. 3d 228, 240, 692 N.E.2d 422, 430 (1998). Accordingly, we find that rather than reversing defendant's conviction, the proper course is to remand for resentencing as a Class A misdemeanor.[6]

---

[6]It should not be inferred from our reliance upon the rule that an unconstitutional amendment leaves the prior law in force that we believe the *entire* 1995 amendment to the Act is unconstitutional after *Davis*. *Davis* was

## IV. TRUTH-IN-SENTENCING

•■ Defendant's final contention is that the case must be remanded to correct his mittimus to provide that he is eligible to receive day-for-day good time credit. The State admits that such an order is required, in light of our supreme court's decision that Public Act 89—404 (which contained "truth-in-sentencing" provisions that required defendant to serve at least 85% of his sentence (Pub. Act. 89—404, § 40, eff. August 20, 1995 (amending 730 ILCS 5/3—6—3(a) (West Supp. 1995)) violated the "single subject" rule of the Illinois Constitution of 1970. See *People v. Reedy*, 186 Ill. 2d 1 (1999). Accordingly, we remand with directions that the circuit court correct defendant's mittimus to reflect that he is entitled to day-for-day good time credit.

## V. CROSS-APPEAL

Finally, the State cross-appeals defendant's sentence. The State contends that the trial court was required to impose consecutive sentences on defendant for attempted aggravated criminal sexual assault, attempted murder, and armed violence and that the court's imposition of concurrent sentences on the attempted murder and armed violence counts rendered the sentence void, which allows this court to remand for proper sentencing. We deny this cross-appeal.

■ Normally the State cannot appeal sentencing issues (155 Ill. 2d R. 604(a)), and a reviewing court is without power to increase a sentence on appeal (155 Ill. 2d R. 615(b)). There is an exception to this rule when the sentencing order the trial court has entered is void for failure to conform to a statutory requirement, however. *People v. Arna*, 168 Ill. 2d 107, 113, 658 N.E.2d 445, 448 (1995). The State contends that in this case the trial court's sentencing order was void because it failed to conform to section 5—8—4(a) of the Unified Code of Corrections, which provides:

"When multiple sentences of imprisonment are imposed on a defendant at the same time, or when a term of imprisonment is imposed on a defendant who is already subject to sentence in this State or in another state, or for a sentence imposed by any district court of the United States, the sentences shall run concurrently or

concerned solely with a proportionality clause challenge to that portion of the amendment which made a violation of the Act by a felon a nonprobationable Class 3 felony. In light of the severability provision contained in the Act (see 430 ILCS 65/15 (West 1994)), it may be the case that the remainder of the amendment still is in force. That question is not before us, however, because in this case, defendant's violation of the Act was treated as a felony under the exact provision found unconstitutional in *Davis*.

consecutively as determined by the court. *** The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, or where the defendant was convicted of a violation of Section 12— 13[, 12—14, or 12—14.1] of the Criminal Code of 1961, in which event the court shall enter sentences to run consecutively." 730 ILCS 5/5—8—4(a) (West 1994).

We reject the State's argument because, as previously noted and discussed, the evidence can sustain a finding that at some point there was a substantial change in the nature of the criminal objective, in that defendant's intent changed from desiring to have sex with the victim to desiring to kill her. Because of this change, consecutive sentences were not required under section 5—8—4(a) of the Code, and the trial court's failure to impose consecutive sentences does not render its order void. See *Arna*, 168 Ill. 2d at 113, 658 N.E.2d at 448 (differentiating a hypothetical case "where defendant intended to commit one crime, and in the course of that crime developed a new objective and committed another"). We note that we need not remand for a determination whether any consecutive sentences were proper, however, because the trial court explicitly found that the defendant was a very dangerous individual from whom society had to be protected, which allowed the court to impose consecutive sentences under section 5—8—4(b) of the Code. 730 ILCS 5/5—8—4(b) (West 1994) (a court may impose a consecutive sentence if it finds that "such a term is required to protect the public from further criminal conduct by the defendant").

## CONCLUSION

For the reasons above stated, we affirm defendant's convictions, reverse defendant's sentence for his violation of the Firearm Owner's Identification Card Act, and remand for resentencing on this offense as well as to correct defendant's mittimus to show that he is eligible for day-for-day good time credit.

Affirmed in part and reversed in part; cause remanded.

McNULTY and RAKOWSKI, JJ., concur.